426 A.2d 1090

**COMMONWEALTH of Pennsylvania**

v.

**Warren Eric SCHALLER, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 2, 1980.

Decided March 13, 1981.

428

John M. O'Connell, Jr., O'Connell & Silvis, Greensburg, for appellant.

James J. Conte, Asst. Dist. Atty., Greensburg, for appellee.

O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION OF THE COURT

O'BRIEN, Chief Justice.

This is an appeal from the judgment of sentence imposed by the Court of Common Pleas of Westmoreland County following appellant's conviction of murder of the third degree.

Appellant raises eleven issues in this appeal. However, the single critical issue presented is whether the trial court erred in refusing to instruct the jury on the complete statutory law of voluntary manslaughter. Appellant was charged with criminal homicide under the Crimes Code, 18 Pa.C.S.A. § 2501.[1] At trial he made a timely request for an instruction on the definition of voluntary manslaughter as set forth in 18 Pa.C.S.A. § 2503(b).[2] Relying on *Common-*

---

1. Section 2501 classifies criminal homicide as murder, voluntary manslaughter, or involuntary manslaughter.

2. Act of December 6, 1972, P.S. 1482, No. 334, § 1, 18 Pa.C.S.A. § 2503(b):

*wealth v. Black,* 474 Pa. 47, 376 A.2d 627 (1977), the court denied the requested instruction on the basis that self-defense was not an issue in the case. The court did, however, instruct the jury on voluntary manslaughter as it is defined in § 2503(a).[3]

Trial of the instant case was completed only thirteen days before this Court's decision in *Commonwealth v. Manning,* 477 Pa. 495, 384 A.2d 1197 (1978), which held that a defendant has an unconditional right on request to an instruction on the complete statutory definition of voluntary manslaughter regardless of whether there is a basis in the evidence for a voluntary manslaughter verdict. In considering appellant's post-trial motions the court recognized that the intervening *Manning* decision appeared to require a new trial of the case but refused to view *Manning* as binding precedent and denied the motion for a new trial.

Appellant's judgment of sentence was affirmed by a special panel of the Superior Court which upheld the trial court's refusal to give a full voluntary manslaughter charge. The Superior Court panel expressly refused to follow *Manning* on the basis that "no more than three justices" of the Supreme Court currently agree on the premise upon which the rule rests—*viz.,* that a defendant charged with homicide is entitled to "any jury instruction not warranted by the evidence." Moreover, the panel noted, "such a rule is inconsistent with *Commonwealth v. Black,* 474 Pa. 47, 376 A.2d 627 (1977), wherein the Supreme Court held that the trial

"Unreasonable belief killing justifiable.—A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify the killing under Chapter 5 of this title, but his belief is unreasonable."

3. Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S.A. § 2503(a):

"General rule.—A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by:

"(1) the individual killed; or

"(2) another whom the actor endeavors to kill, but he negligently or accidentally causes the death of the individual killed."

court need not instruct the jury on self-defense unless the evidence justifies such a finding." *Commonwealth v. Schaller,* Superior Court No. 47 Special Transfer Docket. We granted appellant's petition for allowance of appeal from the Superior Court's order affirming the conviction of murder of the third degree.

## I.

On this appeal the Commonwealth concedes that the trial court's ruling was contrary to our decision in *Manning,* but urges this Court to reconsider the rationale in *Manning* and overrule that decision while affirming the judgment of sentence in the instant case. The Commonwealth argues that where the trial court has ruled as a matter of law that self-defense is not an issue in the case, a jury instruction on voluntary manslaughter as defined in 18 Pa.C.S.A. § 2503(b) is not required.

█ As a general rule the trial court should instruct the jury on the law applicable to the facts of the case before it and should charge only on those points and issues which arise out of the evidence and arguments presented. *Commonwealth v. Tervalon,* 463 Pa. 581, 345 A.2d 671 (1975). Nevertheless, it is clear that the jury should be instructed on the full extent of its power so it may exercise its common sense judgment in determining not only the guilt or innocence of the accused, but also the degree of guilt if guilt is found. See *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1974); *Commonwealth v. Young,* 456 Pa. 102, 317 A.2d 258 (1958).

Pennsylvania case law has long recognized the jury's power to return a verdict of voluntary manslaughter in the absence of provocation and passion where the defendant is charged with murder and the evidence is sufficient to support a conviction of murder. *Commonwealth v. Hoffman,* 439 Pa. 348, 266 A.2d 726 (1970); *Commonwealth v. Kellyon,* 278 Pa. 59, 122 A. 166 (1923). The jury's right to do so derives from the common law doctrine of lesser included offenses which views manslaughter as an offense less serious

than murder because of the absence of malice, but nevertheless, included in the crime of murder. A related common law concept is the jury's prerogative to find a defendant guilty of a lesser degree or grade of offense than the evidence would support out of considerations of sympathy or extenuating circumstances.[4]

Despite the jury's undisputed power to return a voluntary manslaughter verdict, even in the absence of evidence thereof, for many years Pennsylvania law permitted the trial judge to exercise discretion in deciding whether to instruct the jury on voluntary manslaughter as a possible verdict in a case where there was no evidence of provocation or passion. *Commonwealth v. Matthews*, 446 Pa. 65, 285 A.2d 510 (1971); *Commonwealth v. LaRue*, 381 Pa. 113, 112 A.2d 362 (1955); *Commonwealth v. Yeager*, 329 Pa. 81, 196 A. 827 (1938).[5] Thus, exercise of the jury's mercy dispensing power to return a voluntary manslaughter verdict as a lesser included offense of a murder indictment depended on whether or not the trial judge advised the jury that it had such power. *See Commonwealth v. Matthews, supra* (Dissenting Opinion, Pomeroy, J.). This practice resulted in some juries deciding whether and what criminal sanctions were to be imposed without adequate instruction as to all permissible verdicts.

In *Commonwealth v. Jones*, 457 Pa. 563, 319 A.2d 142, *cert. denied*, 419 U.S. 1000, 95 S.Ct. 316, 42 L.Ed.2d 274 (1974), we

4. The purpose of the rule of lesser included offenses at common law was explained in *Commonwealth v. Jones*, 457 Pa. 563, 319 A.2d 142 (Opinion in Support of Affirmance), *cert. denied*, 419 U.S. 1000, 95 S.Ct. 316, 42 L.Ed.2d 274 (1974): "First, it was intended to prevent the prosecution from failing where some element of the crime of murder was not made. Second, it was designed to redound to the benefit of the defendant, since its effect is actually to empower the jury to extend mercy to an accused by finding a lesser degree of crime than is established by the evidence." (citations omitted) 457 Pa. at 569; 319 A.2d at 146. *See also Keeble v. United States*, 412 U.S. 205, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973).

5. The reason advanced for permitting the court to exercise discretion with regard to a voluntary manslaughter charge was to allow it to determine whether such a charge unsupported by any evidence would confuse the jury. *Commonwealth v. Pavillard*, 421 Pa. 571, 220 A.2d 807 (1966).

corrected this anomaly in the law by removing discretion from the trial court. In that case we ruled that a defendant under a murder indictment is entitled, upon request, to have the jury advised of its power to return a verdict of voluntary manslaughter even where there is no evidence to support such a verdict.[6]

The Opinion in Support of Affirmance, authored by Mr. Justice Nix, reasoned that the ruling was required by the fact that the common law principles of lesser included offenses and the jury's mercy-dispensing power had become embedded in Pennsylvania statutory and decisional law. Mr. Justice Nix noted that the Act of Assembly of April 22, 1794, divided the crime of murder into two degrees and required the trial court to submit the question of the degree of the offense to the jury. He noted further that while the 1794 statute was silent on the jury's common law right to determine the existence of murder or manslaughter, commentaries on the law at that time indicate the General Assembly's intention to continue the jury's common law mercy dispensing power. The Penal Code of 1939[7] continued to authorize the jury to determine the degree of murder, while case law after 1939 continued to permit a verdict of voluntary manslaughter under facts justifying a finding of murder. Thus, Mr. Justice Nix reasoned, since the penal code required that the jury be informed of its power to determine the degree of murder, "consistency would suggest that the same rule should be employed as to the power to decide between murder and voluntary manslaughter." 457 Pa. at 573; 319 A.2d at 148.

The Opinion in Support of Affirmance based the rule on the Court's supervisory power, while the Opinion in Support of Reversal rested the decision on constitutional grounds asserting that the practice of allowing the trial court complete discretion to charge or not on voluntary manslaughter

6. The Court, being equally divided, affirmed Jones' conviction, and the rule announced in *Jones* was applied prospectively.

7. Act of June 24, 1939, P.L. 872, § 701, as amended, Act of December 1, 1959, P.L. 1621, § 1, 18 P.S. § 4701.

with no objective standards violated the due process and equal protection rights of defendants. *See also Commonwealth v. Davis*, 449 Pa. 468, 297 A.2d 817 (1972) (Opinion in Opposition to Order).

In *United States ex rel. Matthews v. Johnson*, 503 F.2d 339 (3d Cir. 1974), the United States Court of Appeals for the Third Circuit determined that the rule announced in *Jones* was constitutionally required [8] inasmuch as the practice of allowing trial courts to exercise discretion in charging on voluntary manslaughter in the absence of objective standards violated the requirements of due process.

In *Manning* we relied on this Court's decision in *Jones* and the decision of the Third Circuit in *Matthews*, both of which held that a defendant charged with criminal homicide has a clear right to receive a requested charge on voluntary manslaughter, whatever the nature of the evidence presented or of his defense. Thus, we held, "it follows that [the defendant] has an unconditional right on request to an instruction on the complete statutory definition of the offense of voluntary manslaughter." 477 Pa. at 499, 384 A.2d at 1199.[9] Since five of the six justices who participated in *Manning* agreed with that decision, there can be no doubt that *Manning* is binding precedent on the courts of this Commonwealth.

Nevertheless, the court below refused to follow *Manning* and the Commonwealth asserts on this appeal that our decision in that case was incorrect because it mistakenly viewed *Jones* as controlling. It perceives a critical difference in the fact that *Jones* was decided under the 1939 penal

8. Since this Court did not express a decisional view on the constitutional issues raised in *Jones* (Opinion in Support of Affirmance), 457 Pa. at 574, n. 12, 319 A.2d at 146, n. 12, the Third Circuit determined it was necessary to review the question.

9. In *Manning*, as in the instant case, the trial court charged on voluntary manslaughter, as defined in § 2503(a), but did not charge on the aspect of voluntary manslaughter covered by § 2503(b), which is equally a part of the offense, apparently because it determined there was no evidence of an unreasonable belief by the accused that the killing was justifiable.

statute, which incorporated the common law definition of voluntary manslaughter, while *Manning* was governed by the 1972 Crimes Code [10] which enacted a statutory definition of the offense. The Commonwealth notes that the basis for the decisions in *Jones* and *Matthews* was the lack of objective standards under the 1939 law to guide trial judges in determining whether to charge on voluntary manslaughter. It argues that such standards were supplied by the enactment of a statutory definition of the offense in the 1972 Crimes Code. Thus, it contends, the rationale in *Jones* and *Matthews* was not viable for cases decided under the Crimes Code and *Jones* did not control the issue presented in *Manning*.

Clearly, the Commonwealth misperceives the basis for the decisions in *Jones* and *Matthews*. Those decisions did not result from lack of a definition for voluntary manslaughter but rather, from lack of any consistency in the practice of trial courts with regard to charging on this issue in the absence of evidence. Enactment of a statutory definition of the crime in no way affected the discretion which trial courts exercised in this regard before *Jones* and *Matthews*. Thus, *Jones* was correctly viewed as controlling on the issue of a defendant's right on request to an instruction on the complete statutory definition of voluntary manslaughter.

In essence, the Commonwealth maintains that the rule announced in *Jones* and followed in *Manning* does not apply to prosecutions brought pursuant to the Crimes Code. We rejected that argument in *Commonwealth v. Covil*, 474 Pa. 375, 378 A.2d 841 (1977), where we stated:

"... *Jones* was decided nearly a year after the Crimes Code became effective, and announced a rule applicable to trials which commenced after the date of that decision. Clearly, this Court contemplated that the rule would be applied to prosecutions brought pursuant to the Crimes Code. There is nothing in the Crimes Code which convinces us that our decision was incorrect." 474 Pa. at 379, 378 A.2d at 843.

10. Act of December 6, 1972, P.L. 1482, No. 334, § 1, *et seq.*, 18 Pa.C.S.A. § 101, *et seq.*

*See also Commonwealth v. Jones (a/k/a Dupree),* 473 Pa. 211, 373 A.2d 1338 (1977), where this Court applied the rule which entitles a defendant to a requested instruction on voluntary manslaughter to a case brought pursuant to the Crimes Code.

██ Under the Crimes Code, murder and voluntary manslaughter are both classifications of criminal homicide. 18 Pa.C.S.A. § 2501. Section 2501 supports the view that voluntary manslaughter continues to be a lesser included offense of the crime of murder [11] and thus, a permissible verdict when murder is charged even in the absence of evidence of passion, provocation or imperfect self-defense.[12]

11. It has been argued that enactment of the Crimes Code evidenced an intent by the General Assembly to depart from reliance on the common law for the definition of criminal offenses and provided the opportunity to abandon the common law doctrines of lesser included offenses and the jury's mercy dispensing power in favor of vesting the charging decision in the prosecutor. *See Commonwealth v. Manning,* 477 Pa. 495, 503, 384 A.2d 1197, 1201 (1978) (Dissenting Opinion, Nix, J.); *Commonwealth v. Covil,* 474 Pa. 375, 378 A.2d 841 (1977) (Concurring and Dissenting Opinion, Nix, J.). However, this view does not comport with that of the United States Supreme Court expressed in *Beck v. Alabama,* 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980). *Beck* held that the death penalty may not be imposed upon conviction of a capital offense where the jury was not permitted to consider a verdict of guilty of a lesser included non-capital offense. The Court in *Beck* reaffirmed its commitment to the lesser included offense doctrine as a means of ensuring that the jury will accord the defendant the full benefit of the reasonable doubt standard. It observed that "nearly universal acceptance of the rule in both state and federal courts establishes the value to the defendant of this procedural safeguard." *See also Keeble v. United States,* 412 U.S. 205, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973); *Holloway v. Florida,* 28 Cr.L. 4035, *cert. denied,* —— U.S. ——, 101 S.Ct. 281, 66 L.Ed.2d 137, Mr. Justice Blackmun, with whom Mr. Justice Brennan and Mr. Justice Marshall join, dissenting.

12. It is significant that while the Pennsylvania Crimes Code was based in large part on the American Law Institute's Model Penal Code (Proposed Official Draft, 1962), the General Assembly failed to adopt Section 1.07(5) of the Model Penal Code which provides that the court shall not be obligated to charge the jury with respect to an included offense unless there is a rational basis for a verdict on the included offense.

Compare Rule 31(c) of the Federal Rules of Criminal Procedure, 18 U.S.C.A., which provides that "[t]he defendant may be found guilty of an offense necessarily included in the offense charged. . . ." In

The jury's inherent power to dispense mercy by convicting defendant of a lesser included offense was not affected by the Crimes Code. Thus, the jury should be informed of its power to enter such a verdict by being given a requested instruction on the complete statutory definition of manslaughter. The court's refusal to so instruct in the instant case was reversible error justifying the grant of a new trial.

## II.

Even apart from the *Manning* requirement of a complete voluntary manslaughter instruction, the facts of this case required an instruction on voluntary manslaughter as defined in § 2503(b) since appellant presented some evidence of self-defense. The pertinent facts are as follows:

On July 2, 1977, appellant and the victim had an altercation inside a club in Greensburg, Pennsylvania. Later that evening, as a result of an altercation between appellant and another individual, the bartender asked appellant to leave. His motorcycle was parked on the sidewalk outside the front window of the club. As appellant was preparing to leave on the motorcycle with his girlfriend, he heard pounding on the window next to him. He looked up and saw the victim shaking his fist and saying something that he could not make out. As the victim moved away from the window and toward the door, appellant took a gun from his pocket and,

*Beck, supra,* at 4804, n. 11, the Supreme Court noted "[a]lthough the Rule is permissively phrased, it has been universally interpreted as granting a defendant a right to a requested lesser included offense instruction if the evidence warrants it." (citations omitted). *See also Keeble v. United States, supra; Stevenson v. United States,* 162 U.S. 313, 16 S.Ct. 839, 40 L.Ed. 980 (1896). As to the quantum of proof necessary to give rise to a lesser included offense instruction, the Supreme Court noted in *Stevenson,* 162 U.S. at 323, 16 S.Ct. at 843:

"A judge may be entirely satisfied from the whole evidence in the case that the person doing the killing was actuated by malice; that he was not in any such passion as to lower the grade of the crime for murder to manslaughter by reason of any absence of malice; and yet if there be any evidence fairly tending to bear upon the issue of manslaughter, it is the province of the jury to say whether the crime was murder or manslaughter."

*See also* 23 A C.J.S. § 1288(b).

using both hands, aimed it at the door. The victim came through the door, hesitated, then turned and moved toward appellant who called out, "I don't know you, I don't want any trouble." The victim, who was unarmed, continued moving toward appellant and started to reach out with his hands.

Appellant testified he could see that the victim was angry and that he looked much larger than appellant. He maintained he was afraid of being beaten up. Appellant stated that he did not leave the scene when the pounding began because he and his girlfriend did not have their helmets on and the motorcycle was not started. He further stated that he did not "just walk away" because he could not leave his girlfriend and motorcycle there unprotected.

When the victim was about ten feet away, appellant fired one shot that penetrated his heart. Appellant testified that he tried to shoot in the lower part of the body, but admitted that he gave no warning nor did he tell the victim to stop. He stayed at the scene until the police arrived and turned the gun over to them.

Appellant's trial testimony to the effect that he was in fear of injury and acted to protect himself was uncontradicted and was consistent with statements he gave to the police just after the incident. These statements were testified to at the trial by two police officers. Further, the defense psychiatrist testified that appellant's mental capacity would have been reduced by the eight to ten ounces of alcohol he consumed that evening. The psychiatrist also stated that, in his opinion, appellant was frightened by the victim's aggressive behavior and drew the gun to ward off the fight. When that did not stop the victim's advance, appellant fired what he intended to be a warning or disabling shot to avoid his own physical injury.

The court ruled, as a matter of law, that self-defense was not an issue in the trial and refused to instruct on appellant's claim of self-defense as justification for the killing and on the second definition of voluntary manslaughter which provides that a person who commits an intentional or

knowing killing under an unreasonable belief that the killing was necessary to protect himself is guilty of voluntary manslaughter. In thus eliminating self-defense as an issue the trial court mistakenly relied on *Commonwealth v. Black, supra,* to support its view that the defendant in a homicide case must "establish" a self-defense claim before the issue of self-defense is properly before the jury.[13]

To the contrary, our cases clearly indicate that once the possibility of a defense of self-defense has entered the case from any source whatever, the prosecutor must prove beyond a reasonable doubt that the accused was not acting in self-defense, *see Commonwealth v. Lesher,* 473 Pa. 141, 373 A.2d 1088 (1977); *Commonwealth v. Cropper,* 463 Pa. 529, 345 A.2d 645 (1975), and it is the function of the factfinder to determine whether the prosecution has proven that at least one of the elements of self-defense was absent.

▇ Thus, the factfinder must decide if the prosecution has established beyond a reasonable doubt that the defendant did not subjectively believe he was in imminent peril of death or serious bodily harm or, if he had such a belief, it was unreasonable under the circumstances, or that the accused was not free from fault, or that the accused had a duty to retreat and an opportunity to do so. *Commonwealth v. Myrick,* 468 Pa. 155, 360 A.2d 598 (1976); *Commonwealth v. Cropper, supra.*

▇ The factfinder in this case was the jury, and the jury should have decided the reasonableness of appellant's belief as well as the presence of the other elements of self-de-

---

13. The pertinent language relied on by the court below is as follows: "While there is no burden on the defendant to prove a claim of self-defense, it is nevertheless required that *before such a defense is properly in issue at trial, there must be some evidence, from whatever source, to justify such a finding.* Once the question is properly before the jury, the burden is upon the Commonwealth to prove beyond a reasonable doubt that the defendant was not in fact acting in self-defense." (Citations omitted). (Emphasis supplied). 474 Pa. at 53, 376 A.2d at 630.

fense.[14]  Since appellant presented some evidence of self-defense, he was entitled to an instruction, and the court erred in ruling that the issue was not properly before the jury since appellant had not established a valid claim of self-defense.[15]

Moreover, even if the jury determined that appellant's belief in the necessity of using deadly force was unreasonable, nevertheless, it might have found him guilty of voluntary manslaughter rather than murder if it had been convinced that the killing was committed without malice, thereby negating an element of the crime of murder.  Therefore, in addition to the instruction on the law of self-defense, the jury should have been charged on § 2503(b) which provides for a conviction of voluntary manslaughter where a plea of self-defense has not been sustained but the evidence presented by the defendant in support of self-defense is sufficient to negative the element of malice.  *See Commonwealth v. Thompson*, 389 Pa. 382, 133 A.2d 207 (1957); *Commonwealth v. Banks*, 376 Pa. 531, 103 A.2d 726 (1954); *Commonwealth v. Colandro*, 231 Pa. 343, 80 A. 571 (1911).[16]

14. *Compare Commonwealth v. Walley*, 466 Pa. 363, 353 A.2d 396 (1976); *Commonwealth v. Cropper, supra*, where the trial judge acted as factfinder.

15. *Compare Commonwealth v. Powers*, 484 Pa. 198, 398 A.2d 1013 (1979); *Commonwealth v. Young*, 460 Pa. 598, 334 A.2d 252 (1975); *Commonwealth v. Gray*, 441 Pa. 91, 271 A.2d 486 (1970).  In each of these cases the defendants denied that they used deadly force against the victims, and the issue of self-defense was not otherwise injected into the trial by either prosecution or defense.

16. *See Stevenson v. United States*, 162 U.S. 313, 16 S.Ct. 839, 40 L.Ed. 980 (1896), where the Court stated:
   "The evidence as to manslaughter need not be uncontradicted or in any way conclusive upon the question; so long as there is some evidence upon the subject, the proper weight to be given it is for the jury to determine ...  The evidence might appear to the court to be simply overwhelming to show that the killing was in fact murder, and not manslaughter ... and yet, so long as there was some evidence relevant to the issue of manslaughter, the credibility and force of such evidence must be for the jury, and cannot be [a] matter of law for the decision of the court."  162 U.S. at 314, 315, 16 S.Ct. at 839.
*See also United States v. Crutchfield*, 547 F.2d 496 (9th Cir. 1977).

Order of Superior Court vacated and case remanded for a new trial.

FLAHERTY and KAUFFMAN, JJ., file concurring opinions.

NIX, J., concurs in the result.

LARSEN, J., did not participate in the consideration or decision of this case.

FLAHERTY, Justice, concurring.

I concur with the opinion of Mr. Chief Justice O'Brien only insofar as it holds that sufficient evidence of self-defense was before the jury as to require an instruction on voluntary manslaughter as defined in 18 Pa.C.S.A. § 2503(b). I do not agree, however, that the requirement of a complete voluntary manslaughter instruction as established by *Commonwealth v. Manning*, 477 Pa. 495, 384 A.2d 1197 (1978) should be applied or re-affirmed in this case.

KAUFFMAN, Justice, concurring.

I concur in the result reached by the Majority only because appellant did present some evidence of self-defense, and for that reason was entitled to an instruction on voluntary manslaughter as defined in 18 Pa.C.S.A. § 2503(b).