**Linda MIEZIO, Petitioner,**

v.

**COMMONWEALTH OF PENNSYLVANIA, et al., Respondents.**

**Civ. A. No. 85–2054.**

United States District Court, W.D. Pennsylvania.

Dec. 9, 1985.

Thomas A. Livingston, Pittsburgh, Pa., for petitioner.

John Lee Brown, Asst. Dist. Atty., Beaver County, Beaver, Pa., for respondents.

## OPINION AND JUDGMENT

DUMBAULD, Senior District Judge.

Alleging denial of federal due process under the 14th Amendment,[1] plaintiff, whose conviction of voluntary manslaughter in the Court of Common Pleas of Beaver County, Pennsylvania, has been affirmed by the Superior Court, seeks habeas corpus in this Court. Exceptions have been filed to Magistrate Sensenich's report recommending denial of the writ.

Plaintiff relies on *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072–73, 25 L.Ed.2d 368 (1970)[2] and *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).[3] Plaintiff contends that there was no proof of "passion" or "provocation" which are elements of vol-

---

1. The claim arises directly under the Fourteenth Amendment itself. No "selective incorporation" applying against the States other fundamental rights guaranteed against the federal government by the federal Bill of Rights is involved. See Henkin, "Selective Incorporation in the Fourteenth Amendment," 73 Yale L.J. (1963) 743; Frankfurter, "Memorandum on "Incorporation of the Bill of Rights into the Due Process Clause of the Fourteenth Amendment," 78 Harv. L.R. 747 (1963).

2. "The Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In *Winship* a juvenile court adjudged a boy guilty of delinquency (defined as an act which if done by an adult would be a crime) upon a preponderance of the evidence pursuant to a New York statute. The judge acknowledged that the proof might not establish guilt under the "beyond a reasonable doubt" standard, 397 U.S. at 359–60, 90 S.Ct. at 1070. The Supreme Court held that delinquency must be proved beyond a reason-

able doubt. *Ibid.*, at 365, 368, 90 S.Ct. at 1073, 1075.

3. The question is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." The Court further said: "the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." 443 U.S. at 324, 99 S.Ct. at 2792. The standard must be applied with "explicit reference to the substantive elements of the criminal offense as defined by state law. Whether the State could constitutionally make the conduct at issue criminal at all is, of course, a distinct question." *Ibid.*, at 324, 99 S.Ct. at 2792. The question in *Jackson* was whether the petitioner was sufficiently sober to form a specific intent to kill, required under Virginia law for first degree murder. *Ibid.*, at 309, 325, 99 S.Ct. at 2783–84, 2792.

untary manslaughter as defined in 18 Pa.C. S.A. § 2503(a).[4]

To elucidate this issue it will be necessary to review the facts of the case and the novel statutory scheme in force in Pennsylvania with respect to the law of homicide.

The facts are well summarized in the Magistrate's report as follows:

It was stipulated at trial that petitioner's husband had died from a single gunshot wound to the head fired from his own rifle which was admitted into evidence without objection. The remaining evidence consisted primarily of the testimony of petitioner herself regarding the circumstances of the shooting, and of the testimony of police officers describing the scene and recounting Mrs. Miezio's statements at the scene of the shooting and later the same evening at the police barracks. The evidence established that on the evening of September 29, 1981, Mr. Miezo returned home at approximately 9:30 p.m. in a state of intoxication. He and Mrs. Miezo began arguing and at some point he proceeded to load with at least one bullet. On three separate occasions the victim held the barrel of the rifle to his head and invited petitioner to pull the trigger. On the third occasion the two were sitting beside one another on the living room couch, continuing to argue, with the barrel of the rifle to the victim's head and petitioner's hand resting on the rifle butt which was in her lap. After the victim's third invitation to petitioner to pull the trigger, the rifle discharged killing the victim. All of the testimony establishes that Mrs. Miezio was calm and coherent by the time police arrived on the scene. As to her state of mind immediately prior to the shooting police testimony was that on the evening of the victim's death Mrs. Miezio told police twice that at her husband's third invitation she "reached over and pulled the trigger." (Tr. 23–24) Mrs. Miezio testified that she turned to look at her three year old daughter who had entered the room whereupon the rifle discharged. She testified that she had no personal recollection of pulling the trigger but that she recalled telling police she must have because she believed her husband could not have reached it. The police dispatcher to whom Mrs. Miezo reported the occurrence read a transcript of that telephone report in which Mrs. Miezio had said, "I killed my husband."

Under the foregoing state of the record, it is clear that there was sufficient evidence to submit to the jury the issue of defendant's guilt or innocence of first degree murder[5] (an intentional killing) 18 Pa.C. S.A. § 2502(a) [1974 to 1982] Supplementary Pamphlet; and a rational trier of the facts could (if accepting the Commonwealth's evidence at its strongest, but probably would not) under *Winship* and *Jackson, supra,* find defendant guilty of that offense.

That being the case, it follows under the law of Pennsylvania (which we confess is "fearfully and wonderfully made" by the 1972 codification and decisions of the Pennsylvania Supreme Court with the help of the Third Circuit in *U.S. ex rel. Matthews v. Johnson,* 503 F.2d 339 (C.A.3, 1974) that the jury in its traditional mercy dispensing power or prerogative *may find the defend-*

---

**4.** "A person who kills a person without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by ... the individual killed."

**5.** As explained in a scholarly opinion by Mr. Justice Pomeroy in *Com. v. Polimeni,* 474 Pa. 430, 437–42, 378 A.2d 1189 (1974) the 1972 Crimes Code created one major offense yclept criminal homicide classified into three kinds of murder and two kinds of manslaughter, which are "constituent subsidiary offenses within the single major offense. *All grades of unlawful killing thus have been made lesser included offenses of the overall crime of criminal homicide.* The differences between the classifications are largely a function of the state of mind of the perpetrator." (Italics supplied). So far as I know, however, it has never been held that defendants must be indicted for "criminal homicide, that is to say murder of the first degree, in that he did feloniously and maliciously wilfully and intentionally, with premeditation and malice prepense, kill and slay &c."

*ant guilty of any lesser-included offense regardless of the evidence presented or of his defense,* and accordingly that the trial judge must charge on all such offenses in order that the jury may be aware of its power. The various types of criminal homicide, "classified" as first, second, or third degree murder and voluntary and involuntary manslaughter, are *per se* to be treated as "lesser included offenses," even though logically they do not measure up to the description of "necessarily included offenses" which historically gave rise to the jury's mercy-dispensing power.[6]

That must be recognized as the substantive criminal law of Pennsylvania. (Perhaps the situation may give rise to the "distinct question," mentioned in *Jackson,* 443 U.S. at 324 n. 16, 99 S.Ct. at 2791–92 n. 16, "whether the State could constitutionally make the conduct at issue criminal at all").

It would be interesting and perhaps also of some historical and practical importance to trace the development of the doctrine of lesser included offenses from its origin to the latest Janus-faced pronouncements of the Supreme Court of Pennsylvania.[7]

However, I shall profit by the wisdom learned at a recent Federal Judicial Center conference for the Second and Third Circuits, where a District Judge from the Second Circuit whose name I did not catch set forth substantially as follows his customary formula of apprising counsel: "I know you are not interested in what I think, but in what the Court of Appeals thinks; so I will assist you in obtaining their view as promptly as possible by denying the writ."

Such a ruling is sufficiently supported, we believe, by the opinion of Mr. Justice Pomeroy in *Polimeni* (see note 5, *supra*) and also his opinion in *Com. v. Manning,* 477 Pa. 495, 499, 384 A.2d 1197 (1978),

stating that the trial judge's ruling that the evidence in the case did not warrant a charge on voluntary manslaughter

would have been acceptable under the law prior to this Court's decision in *Commonwealth v. Jones,* 457 Pa. 563, 319 A.2d 142, *cert. den.,* 419 U.S. 1000, 95 S.Ct. 316, 42 L.Ed.2d 274 (1974), and the decision of the Court of Appeals for the Third Circuit in *United States ex rel. Matthews v. Johnson,* 503 F.2d 339 (3rd Cir.1974), *cert. denied sub nom Cuyler v. Matthews,* 420 U.S. 952, 95 S.Ct. 1336, 43 L.Ed.2d 430 (1975). Both of these cases hold, in essence, that a trial judge has or should have no discretion to deny a defendant charged with criminal homicide a requested charge on voluntary manslaughter. See also *Commonwealth v. Cain,* 471 Pa. 140, 369 A.2d 1234 (opinions in support of affirmance); *Commonwealth v. Hilliard,* 471 Pa. 318, 370 A.2d 322 (1977). From the premise that a defendant charged with murder has a clear right to receive such an instruction on request, *whatever the nature of the evidence presented or of his defense,* it follows that he has an unconditional right on request to an instruction on the complete statutory definition of the offense of voluntary manslaughter. (Italics supplied)

Moreover, Chief Justice O'Brien in *Com. v. Shaller,* 493 Pa. 426, 435–36, 426 A.2d 1090, explained that

Under the Crimes Code, murder and voluntary manslaughter are both classifications of criminal homicide. 18 Pa.C. S.A. § 2501. Section 2501 supports the view that voluntary manslaughter continues to be a lesser included offense of the crime of murder and thus, a permissible verdict when murder is charged even in the absence of evidence of passion, prov-

---

**6.** *Beck v. Alabama,* 447 U.S. 625, 632–38, 100 S.Ct. 2382, 2387–90, 65 L.Ed.2d 392 (1980) explains the development of the rule and accords it constitutional sanction as required by due process. See also *Keeble v. U.S.,* 412 U.S. 205, 208, 93 S.Ct. 1993, 1995–96, 36 L.Ed.2d 844 (1973); but cf. *Sparf v. U.S.,* 156 U.S. 51, 63–64, 15 S.Ct. 273, 278, 39 L.Ed. 343 (1895).

**7.** There are 200 pages of case law on the homicide provisions of the 1972 code contained in the 1974 to 1982 Supplemental Pamphlet in Purdon's Consolidated Statutes Annotated. The cases cited hereafter suffice, in our judgment, to dispose of the case at bar.

ocation or imperfect self-defense. The jury's inherent power to dispense mercy by convicting defendant of a lesser included offense was not affected by the Crimes Code. Thus, the jury should be informed of its power to enter such a verdict by being given a requested instruction on the complete statutory definition of manslaughter.

The charge of the learned trial judge in the case covered all five classifications [8] of lesser included offenses, in conformity with the above-quoted Supreme Court pronouncements.

We also note that in *U.S. ex rel. Matthews v. Johnson,* 503 F.2d 339, 340, n. 3 (C.A.3, 1974), now Chief Judge Aldisert, a former Common Pleas Judge in Pennsylvania, noted with no indicia of disapproval, that "Pennsylvania trial judges must now grant the request for a voluntary manslaughter charge in all murder cases being tried on or after May 2, 1974." [503 F.2d at 341 n. 6]. He likewise noted that "where the evidence would be sufficient to support a conviction of murder, the return of a verdict of voluntary manslaughter is strictly within the jury's prerogative even in the absence of provocation and passion," citing *Com. v. Hoffman,* 439 Pa. 348, 356–59, 266 A.2d 726 (1970). This is likewise an opinion by Mr. Justice Pomeroy.[9]

We conclude that the jury's mercy-dispensing power is *in favorem vitae* and for the benefit of defendants. It persists after the 1972 codification. Hence plaintiff's conviction is valid. The writ must be denied.

■ As a further independent ground for denying the writ, we hold that the evidence in the record did sufficiently prove "passion" and "provocation." Certainly the action of plaintiff's husband in repeatedly handing her a weapon and taunting her to pull the trigger constitutes provocation. The emotional disturbance generated by such conduct may properly be described as "passion." Passion need not necessarily be anger or uncontrollable hostility. And provocation need not be a threat directed at the person endangered by it. It is not stretching the terms of 18 Pa.C.S.A. § 2503(a) to conclude that it covers the facts of record in the case at bar.

## JUDGMENT

For the foregoing reasons the report of the magistrate is confirmed and adopted by this Court, and the writ of habeas corpus sought by plaintiff is denied, and final judgment is rendered against plaintiff Linda Miezio and in favor of defendant Commonwealth of Pennsylvania (and the writ is dismissed against the other "fifth wheel" defendants, all of whom probably have absolute or qualified immunity).

---

**8.** Though the Court pointed out that second degree murder (*i.e.,* felony murder, under 18 Pa.C.S.A. § 2502(b)) could have no possible application to the facts in the case at bar, yet he made clear that the jury had power to convict of that offense.

**9.** *Hoffman* was decided before the Crimes Code of 1972, but passion and provocations were part of the common law definition of voluntary manslaughter. Codification did not affect the jury's prerogative of mercy. See *Schaller, supra,* 493 Pa. at 436, 426 A.2d 1090.