UNITED STATES of America, Appellee,

v.

Everett DeNOYER, Appellant.

No. 86–5098.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 13, 1986.

Decided Feb. 9, 1987.

Terry L. Pechota, Rapid City, S.D., for appellant.

David L. Zuercher, Asst. U.S. Atty., Pierre, S.D., for appellee.

Before HEANEY and ROSS, Circuit Judges, and DUMBAULD,* Senior District Judge.

DUMBAULD, Senior District Judge.

Defendant, Everett DeNoyer, was convicted, under 18 U.S.C. § 1153 [1] of involuntary sodomy as defined and punished under South Dakota Law [2] (the parties being resi-

---

\* The HONORABLE EDWARD DUMBAULD, Senior District Judge for the Western District of Pennsylvania, sitting by designation.

1. 18 U.S.C. § 1153 provides:

*Any Indian who commits against the person* or property *of another Indian* or other person any of the following offenses namely, murder, manslaughter, kidnaping, maiming, rape, *involuntary sodomy,* carnal knowledge of any female, not his wife, who has not attained the age of sixteen years, assault with intent to commit rape, incest, assault with intent to commit murder, assault with a dangerous weapon, assault resulting in serious bodily injury, arson, burglary, robbery, and a felony under section 661 of this title *within the Indian country,* shall be subject to the same law and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States.

As used in this section, the offenses of burglary, *involuntary sodomy,* and incest *shall be defined and punished in accordance with the laws of the State in which such offense was committed as are in force at the time of such offense.* [Emphasis added.]

Involuntary sodomy was added to the enumeration of offenses set forth in section 1153 by section 1009 of the Comprehensive Crime Control Act of October 12, 1984, 98 Stat. 2141. *See United States v. Renville,* 779 F.2d 430, 433 (8th Cir.1985).

2. The superseding indictment of June 18, 1985, charges violation of South Dakota Codified Laws Section 22-22-1(4) and Section 22-22-2. Those sections in pertinent part provide:

22-22-1. Rape defined—Degrees—Felony. Rape is an act of sexual penetration accomplished with any person other than the actor's spouse under any one or more of the following circumstances:

\*   \*   \*   \*   \*   \*

(4) Where the victim is less than ten years of age; \* \* \*

\*   \*   \*   \*   \*   \*

A violation of subdivision \* \* \* (4), of this section is rape in the first degree, which is a Class 2 felony.

22-22-2. Sexual penetration defined—Acts constituting sodomy—Medical practitioners excepted. Sexual penetration means an act, however slight, of sexual intercourse, cunnilingus, fellatio, anal intercourse, or any *intrusion,* however slight, of any part of the body or of any object into the genital and anal openings of another person's body. All of the foregoing acts of sexual penetration, except sexual intercourse, are also defined as sodomy. Practitioners of the healing arts lawfully practicing within the scope of their practice are not included within the provisions of this section.

[The above extracts are from South Dakota Codified Laws, 1986 pocket supplement. 1985

dents of the Rosebud Indian Reservation in that state). After being sentenced for study under 18 U.S.C. § 4205(d), he was given a dispositive sentence of eighteen years on February 14, 1986. Defendant raises on appeal a number of issues. After careful consideration, for the reasons hereafter elaborated, we affirm the judgment of the district court.

The events giving rise to this prosecution began to unfold when on February 22, 1985, defendant's son, Tim, aged five, was taken by his mother to a hospital in Winner, South Dakota, and doctors there, and later at Yankton, found his anus abnormal and bloody. They concluded that it had been stretched or dilated by insertion of a foreign body for a distance of at least four inches. The diagnosis of the three doctors who had examined the boy was that his injury was consistent with penetration of Tim's anus by a penis.[3]

Upon release from the hospital, Tim was placed in a foster home. While there, he was interviewed by social workers. It was necessary for them to determine whether it would be appropriate to return him to his home and, accordingly, to attempt to ascertain whether his father was the party causing his injury. Apparently, the first to discuss the incident with Tim was Carol Kay Horstman on February 23, 1985; the second was Angela Keierleber on February 27, 1985; the third, Michelle Tapken on March 15 and April 18, 1985; and lastly, Mary Carole Curran, Ph.D., O.S.B., an experienced clinical psychologist, on April 4, 1985, and subsequently. Dr. Curran testified at the trial, as did Tim DeNoyer himself. He testified that his father, the defendant, was the perpetrator of the offense.

The social workers describe the five-year-old boy as a nonverbalizer; he would not discuss the incident in words. But when held in the lap of the workers, he would, by shaking his head, respond in the affirmative or negative to their questions. None of the workers appear to have proceeded by means of improperly suggestive leading questions. On the contrary, they used a "multiple choice" method of discussing the incident, and the boy was apparently discerning in his ability to answer negatively or affirmatively in accordance with his recollection in a trustworthy manner.

We shall review seriatim the issues raised by defendant.

It is first contended that the out-of-court statements of Tim made to the social workers should have been excluded. The trial judge held them admissible under Fed.R. Evid. 803(4) and 803(24).

■ On such evidentiary issues, the standard of review is whether there is a clear abuse of discretion. *United States v. Renville*, 779 F.2d 430, 439 (8th Cir.1985), a case quite similar to the case at bar. In *Renville*, the child's out-of-court statements were found admissible under both subsections (4) and (24) of Fed.R.Evid. 803. Defendant's contention that Tim's statements were not sought for medical treatment purposes is refuted by the explanation in *Renville*, 779 F.2d at 436–37, that

> Statements by a child abuse victim * * * that the abuser is a member of the victim's immediate household *are* reasonably pertinent to treatment. * * * The exact nature and extent of the psychological problems which ensue from child abuse often depend on the identity of the abuser. [Emphasis in original.]

■ We emphasize that we agree with *United States v. Cree*, 778 F.2d 474, 478 (8th Cir.1985), that this Circuit follows the modern rule that in cases involving young child witnesses, the administration of justice is served by the admission of statements made in a more relaxed environment without the possible harm of traumatic courtroom encounter.

---

amendments to section 22–22–1 did not affect the pertinent parts of the section. A 1986 amendment added the second sentence of section 22–22–2.]

**3.** It should be observed that this is the customary cautious professional jargon of the medical profession for what lawyers would speak of as causation.

Another evidentiary ruling attacked by defendant is the admission of statements made by defendant DeNoyer to Paul Schueth, chief of police at Winner, South Dakota. Tim had been taken to a hospital there on February 22, 1985, and four days later, the boy's parents went to Winner to discuss his condition with Dr. Webb, who had treated him. When they arrived, Dr. Webb called the chief of police. Upon arrival, he identified himself to the DeNoyers and stood by the door while the doctor talked to the DeNoyers about their son. After this conversation, Mrs. DeNoyer was asked to leave the room; and Schueth talked with the defendant, and later drove him to the police station for further interrogation. *Miranda* warnings [4] were not given. However, Schueth testified (but defendant denied) that DeNoyer was told that he did not have to talk to Schueth. In any event, it must be remembered that defendant himself was a policeman, and doubtless could recite the *Miranda* warnings in his sleep. Moreover, it is doubtful whether he was really in a custodial setting or the type of situation where the *Miranda* warnings are useful in preventing unsophisticated suspects from being overreached by police misconduct. DeNoyer was never under arrest during the discussions with Schueth.

There were only two items the admission of which is assailed on appeal. Schueth testified that, without there having been any previous mention of the subject, De-Noyer, out of the blue, asked whether his son had been sexually abused. Schueth responded by asking why DeNoyer had brought up the subject. At another time, Schueth asked defendant whether he "did it." DeNoyer answered, "I don't know."

■ These remarks would seem to qualify as admissible under the general rule permitting admissions against penal interest by a party, although they appear to have little probative value. Their admission does not appear to be harmful to defendant.

The dialogue reminds one of the detective story ploy where the sleuth is asked, "What time was it when the victim was shot?" and replies, "How did you know he was shot? The announcement in the media said only that his body was discovered on the railroad track. Only the murderer would know that he was shot."

However, in the case at bar, the detrimental impact of the remark made by defendant would be very slight. The doctors' diagnosis of a condition "consistent" with sexual abuse had doubtless been made known to defendant, and possibly mentioned during the DeNoyers' discussion with Dr. Webb while the chief of police stood by the door.

Under all the circumstances, it seems impossible to view the trial judge's admission of these items as abuse of discretion.

■ The same is true of defendant's contention that a psychological examination of Tim to determine his mental state should have been ordered by the Court. Under Eighth Circuit jurisprudence, such an examination is discretionary with the court. *United States v. Riley*, 657 F.2d 1377, 1387 (8th Cir.1981). Such a "drastic measure" was not called for in the case at bar since the data with respect to Tim's condition had been fully described in the testimony of Dr. Curran and other witnesses, and could be adequately evaluated by the jury in the light of such points as defense counsel could properly emphasize in cross-examination and argument.

Perhaps appellant's most meritorious contention on appeal is that the trial judge should not have excluded the testimony which would have been given by defendant's expert in school psychology, Sharon White Hawk.

■ The proffered witness had never examined Tim and her testimony would have been based on her listening to the boy's testimony and Dr. Curran's testimony in court. As stated in *Riley*, 657 F.2d at

---

**4.** This designation is commonly used, both in court and in television shows, to describe the ritual prescribed in *Miranda v. Arizona,* 384 U.S. 436, 467–73, 86 S.Ct. 1602, 1624–27, 16 L.Ed.2d 694 (1966).

1387, "We find no error in the district court's refusal to admit this kind of expert testimony." Very seldom will such expertise serve a useful purpose and amount to more than cumulative surplusage. Sharon White Hawk's proposed testimony was largely speculative and consisted chiefly in comments that she would have examined Tim in a somewhat different manner than Dr. Curran employed. The criticisms she would have voiced were patent from Dr. Curran's full and detailed disclosure of her procedures and were adequately presented to the evaluation of the jury without additional cumulative testimony. The rule in this Circuit is that it is discretionary with the trial court whether or not to admit such expert testimony. *United States v. Purham*, 725 F.2d 450, 454 (8th Cir.1984). (*Cf. United States Downing*, 753 F.2d 1224, 1244 (3d Cir.1985)). We find no abuse of discretion in excluding this testimony. At worst, it is harmless error. *Chapman v. California*, 386 U.S. 18, 22, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967).

As the trial judge noted, defendant's expert was basically a school psychologist and not a clinical psychologist, as Dr. Curran was, with extensive experience in dealing with sexual abuse cases. Essentially, then, Sharon White Hawk's testimony would simply have been comment by one witness on the testimony of another witness. Usually, and particularly in view of the state of the record in the case at bar, the jury is capable of evaluating a witness's testimony in the light of the comments of able counsel in their closing summations, without additional comment offered by other witnesses.

■ We have carefully considered defendant's points and are convinced that the jury could reasonably have accepted Tim's testimony and Dr. Curran's as sufficiently trustworthy, and sufficiently convincing to establish defendant DeNoyer's guilt beyond a reasonable doubt.

■ Defendant also alleges error in the exclusion of his offers to prove that his wife's brother undressed a five-year-old girl at a prayer meeting; that a neighbor two houses away from the DeNoyer dwelling had committed sodomy a year previous to the incident in the case at bar; and that other deviant sex offenders were operating in the community. This sort of evidence was properly excluded as remote and speculative. Such efforts to cast suspicion elsewhere fall far short of establishing a "Perry Mason defense." The proferred testimony was pure "red herring" and had no probative value in establishing the culpability of any party other than the defendant with respect to the offense involved in the case at bar.

Likewise, utterly irrelevant was defendant's proposal to show that Angela Keierleber's manner was accusatory when talking to other children about the case. The same is obviously true with respect to the proffered testimony of DeNoyer's previous wife that he had been a normal husband and father during that marriage. Similarly, there was no error in charging that the testimony of character witnesses regarding defendant's reputation for truth and veracity should be considered by the jury only in evaluating defendant's credibility. Naturally, the evidence should be used only with respect to the trait concerning which the witnesses testified. Likewise, since no issue of identification was involved in the case at bar, there was no occasion to give any instructions on that topic. Nor does the exclusion of Janell Sully's testimony that Dr. Curran in preparation for a custody hearing indicated some uncertainty as to defendant's guilt amount to abuse of discretion or harmful error. It would be natural for her to desire greater certainty on account of the nonverbalized nature of Tim's responses. Technically, Sully's testimony might have been admissible impeachment as a prior inconsistent statement, but of a very peripheral nature, and clearly not amounting to an error warranting reversal for abuse of discretion.

In addition to evidentiary issues, defendant raises several questions of law: whether instructions regarding lesser included offenses should have been given; whether the charge was defective in not requiring

proof that the anal intercourse was accomplished for sexual gratification, and was involuntary on the part of the victim; and that the sentence was excessive.

The five requirements for a charge on lesser included offenses in this Circuit[5] are clearly enumerated in *United States v. Elk*, 658 F.2d 644, 648–49 (8th Cir.1981), and *United States v. Collins*, 652 F.2d 735, 741–42 (8th Cir.1981). Defendant's request for such a charge in the case at bar is precluded by the fourth requirement that "the proof on the element or elements differentiating the two crimes is sufficiently in dispute so that the jury may consistently find the defendant innocent of the greater and guilty of the lesser included offense * * *. Moreover, it is beyond dispute that a defendant is not entitled to a lesser included offense instruction unless the evidence adduced at the trial provides a rational basis upon which the jury could find him not guilty of the greater but guilty of the lesser offense." *Elk*, 658 F.2d at 648.

Furthermore, when defendant's testimony is completely exculpatory and, if believed, could only lead to acquittal, or where "the defendant claimed complete innocence throughout the trial" [as DeNoyer did in the case at bar], there is no rational basis for a lesser included offense instruction. 658 F.2d at 649.

■ Under the circumstances of the case at bar, it would not be reasonably possible to acquit defendant of the major offense but convict him of a lesser included offense. It is true that there was evidence that defendant had spanked his son hard on the butt. However, no spanking, however severe, could have produced the condition of stretching or dilatation of the anus which was observed by the medical doctors and described as consistent with penetration of a penis. Similarly, the injuries noted by the doctors indicated a consummated offense, not one merely attempted. Defendant's asserted defense was complete innocence, not perpetration of a less serious infraction. Thus, under our cases, there was no occasion for a charge on lesser included offenses and its denial was not error.

Little time need be spent on defendant's argument that the jury could not reasonably find that the act of sodomy was intended to arouse or gratify the perpetrator's sexual desire,[6] or that the penetration was involuntary on the part of the victim. As the English judge said when a man took a woman to a hotel room, they went not thither to say a paternoster. Nor did DeNoyer's action have the purpose of advancing the progress of medical science. He did not go to the bathroom to administer an enema to Tim. And it was not, in the often-heard phrase, a transaction between "consenting adults." The statute itself eliminates the element of consent when, as here, "the victim is less than ten years of age."

■ Nor does the defendant's contention that the sentence was excessive merit elaborate refutation. The sentence was within the statutory range; indeed, it was not the maximum prescribed by law, but approximately two-thirds thereof, eighteen rather than twenty-five years.[7] The crime was a serious offense,[8] a heinous variety of

---

5. To avoid any possible confusion, it should be noted that a peculiar Pennsylvania rule in homicide cases, in deference to the jury's prerogative of mercy *in favorem vitae*, requires the charge to specify all lesser included offenses even if they are utterly unsupported by any evidence in the record. *Miezio v. Commonwealth of Pa.*, 626 F.Supp. 691, 695 (W.D.Pa.1985), *aff'd*, August 7, 1986, 800 F.2d 1126, 1136 (Table); *U.S. ex rel. Matthews v. Johnson*, 503 F.2d 339, 340 (3d Cir.1974).

6. It may also be noted that Section 22–22–7.1, which defendant cites and which speaks of "the intent to arouse or gratify the sexual desire of either party," relates to a separate crime ("sexual contact," proscribed in Section 22–22–7); and becomes irrelevant in view of our conclusion with respect to lesser included offenses.

7. In *United States v. Stead*, 740 F.2d 657, 659 (8th Cir.1984), a twenty-year maximum sentence was upheld.

8. "A court is unquestionably free to consider the magnitude of the violation charged * * * when imposing sentence." *United States v. Miller*, 589 F.2d 1117, 1139 (1st Cir.1978). The enormity of DeNoyer's offense, incestuous sodomy, is undeniable.

*malum in se,* not a venial *malum prohibitum,* such as failure to have a driver's license in the glove compartment. There is no occasion for hesitating to follow the general rule that appellate review of sentencing is extremely limited.[9] None of the exceptional circumstances which warrant intrusion by an appellate court is presented in the case at bar.

For the foregoing reasons, the judgment of the district court is affirmed.

---

**9.** *Dorszynski v. United States,* 418 U.S. 424, 431, 443, 94 S.Ct. 3042, 3046, 3052, 41 L.Ed.2d 855 (1974); *Woosley v. United States,* 478 F.2d 139, 141–44 (8th Cir.1973); *United States v. Miller,* 589 F.2d at 1138; *United States v. Gamboa,* 543 F.2d 545, 546–47 (5th Cir.1976).