**UNITED STATES of America, Appellee,**

v.

**Roy SPOTTED WAR BONNET, Appellant.**

No. 88–5040.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 14, 1990.

Decided May 28, 1991.

Rehearing and Rehearing En Banc Denied Aug. 8 and 12, 1991.

Jerry L. Wattier, Pierre, S.D., for appellant.

Mikal Hanson, Pierre, S.D., for appellee.

Before LAY, Chief Judge, and ARNOLD and WOLLMAN, Circuit Judges.

ARNOLD, Circuit Judge.

This case is before us again on remand from the Supreme Court of the United States. In *United States v. Spotted War Bonnet*, 882 F.2d 1360 (8th Cir.1989), we affirmed defendant's convictions on two counts of carnal knowledge in violation of 18 U.S.C. §§ 1153 and 2032, and two counts of incest in violation of 18 U.S.C. § 1153 and S.D.Codified Laws Ann. §§ 22–22–1(6), 25–1–6. The defendant filed a petition for certiorari. On June 28, 1990, the Supreme Court granted the petition, vacated our judgment, and remanded the case to us for further consideration in light of *Idaho v. Wright*, — U.S. —, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). Having fully reconsidered our previous decision in accordance with the Supreme Court's directions, — U.S. —, 110 S.Ct. 3267, 111 L.Ed.2d 777 (1990) we again affirm the judgments of conviction.

## I.

The principal questions presented concern the use of certain hearsay statements against defendant. These statements were made by his two children, the victims of the alleged crimes, to Priscilla Hornby, a social worker, and Dr. Mary Curran, a clinical psychologist. Both Ms. Hornby and Dr. Curran were allowed to testify at trial as to what the children had told them. On the previous appeal, we held that there had been no abuse of discretion on the part of the trial court [1] in admitting this testimony under the residual hearsay exception, Fed. R.Evid. 803(24). 882 F.2d at 1363–64. We also cited Rule 803(4), having to do with statements made to medical professionals for purposes of diagnosis or treatment, as a justification for the admission of Dr. Curran's testimony. *Id.* at 1364 n. 2. Our opinion did not expressly address the Confrontation Clause objections urged by defendant, but our affirmance of the judgments of conviction rejected these arguments by necessary implication.

In *Idaho v. Wright, supra,* the Supreme Court comprehensively explained how the Confrontation Clause applies in child-abuse cases. There, the issue was the admissibility of testimony of Dr. John Jambura, a pediatrician with extensive experience in child-abuse cases. Dr. Jambura was allowed, under Idaho R.Evid. 803(24), to testi-

---

**1.** The Hon. Donald J. Porter, Chief Judge, United States District Court for the District of South Dakota.

fy to statements made to him by the alleged child victim. The Supreme Court held that this testimony violated the Confrontation Clause of the Sixth Amendment.

The Court first assumed for purposes of the case before it that the Confrontation Clause requires the prosecution to show that the child witness is unavailable at trial. It then turned to the real question before it: whether the incriminating statements made to the physician "bore sufficient indicia of reliability to withstand scrutiny under the Clause." 110 S.Ct. at 3147. Citing *Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980), the Court held that the reliability requirement can be met in either of two ways: "[W]here the hearsay statement 'falls within a firmly rooted hearsay exception,' or where it is supported by 'a showing of particularized guarantees of trustworthiness.'" 110 S.Ct. at 3147, quoting *Roberts,* 448 U.S. at 66, 100 S.Ct. at 2539. The Court noted that the residual hearsay exception, Idaho R.Evid. 803(24), which is identical to Fed.R. Evid. 803(24), "is not a firmly rooted hearsay exception for Confrontation Clause purposes." 110 S.Ct. at 3147. Accordingly, the statements in question were presumptively unreliable and had to be excluded absent a showing of particularized guarantees of trustworthiness. *Id.* at 3148. This showing had to be made "from the totality of the circumstances," but, the Court explained, "the relevant circumstances include only those that surround the making of the statement and that render the declarant particularly worthy of belief." *Ibid.* Examining the record before it, the Court concluded that this showing had not been made. Accordingly, it affirmed the judgment of the Supreme Court of Idaho, which had reversed the conviction and remanded for a new trial.

## II.

It seems likely that *Wright* is at odds with a number of our cases. In general, we have broadly upheld the discretion of trial courts to admit hearsay statements of juvenile victims in child-abuse cases. See, *e.g., United States v. DeNoyer,* 811 F.2d 436 (8th Cir.1987); *United States v. Dorian,* 803 F.2d 1439 (8th Cir.1986); *United States v. Renville,* 779 F.2d 430 (8th Cir. 1985); *United States v. Cree,* 778 F.2d 474 (8th Cir.1985). These cases did not subject the statements in question to the rigorous and carefully structured Confrontation Clause analysis that is now required under *Wright.* Nor did the trial court in the present case do so—understandably, in view of the state of our own precedents at the time the case was tried. No finding was made that the statements in question had particularized guarantees of trustworthiness, nor did the District Court hold, at least as to the statements made to the social worker, Ms. Hornby, that they came within a firmly rooted hearsay exception.

■ After carefully re-reading the entire transcript of the trial, however, and considering the applicability of the Supreme Court's opinion in *Wright,* we conclude that the Confrontation Clause was not violated here. The Clause is satisfied when the hearsay declarants, here the alleged child victims, actually appear in court and testify in person. The law is ably summarized as follows in an article cited in the Supreme Court's opinion in *Wright,* 110 S.Ct. at 3149:

> The confrontation clause presents an obstacle to admitting hearsay statements only when the child does not testify in the state's case either because of unavailability or by choice of the prosecution. Under *California v. Green,* [399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970),] when the witness is available to be cross-examined at trial concerning her prior statements, the confrontation clause is not violated by use of such prior statements. And under the recent decision in *United States v. Owens,* [484 U.S. 554, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988),] even the failure of the witness to remember the details of the statement would not violate the right.

Mosteller, *Child Sexual Abuse and Statements for the Purpose of Medical Diagnosis or Treatment,* 67 N.C.L.Rev. 257, 286–87 (1989) (footnotes omitted).

Here, both children testified in open court and were cross-examined by defense counsel. To be sure, simply putting a child on the stand, regardless of her mental maturity, is not sufficient to eliminate all Confrontation Clause concerns. If, for example, a child is so young that she cannot be cross-examined at all, or if she is "simply too young and too frightened to be subjected to a thorough direct or cross-examination[,]" *United States v. Dorian, supra,* 803 F.2d at 1446, the fact that she is physically present in the courtroom should not, in and of itself, satisfy the demands of the Clause. Under *Owens,* however, a perfectly satisfactory cross-examination is not required by the Clause, and a witness who cannot remember the details of statements she has made in the past can still be sufficiently available for cross-examination to satisfy the constitutional requirement.

The key holding for present purposes, we think, is contained in *United States v. Owens, supra,* 484 U.S. at 558, 108 S.Ct. at 842. There, the Court agreed with the following proposition advanced by Justice Harlan in his concurring opinion in *California v. Green, supra:* "[A] witness'[s] inability to 'recall either the underlying events that are the subject of an extra-judicial statement or previous testimony or recollect the circumstances under which [an out-of-court] statement was given, does not have Sixth Amendment consequence.'" *Owens,* 484 U.S. at 558, 108 S.Ct. at 842, quoting *Green,* 399 U.S. at 188, 90 S.Ct. at 1951. See also *Delaware v. Fensterer,* 474 U.S. 15, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985) (per curiam), holding "that there was no Confrontation Clause violation when an expert witness testified as to what opinion he had formed, but could not recollect the basis on which he had formed it." *Owens,* 484 U.S. at 558, 108 S.Ct. at 842.

■ Accordingly, when the contention is made that the live testimony of a given witness satisfies Confrontation Clause concerns as to the admissibility of out-of-court statements made by the same witness, the question is whether there is "an *opportunity* for effective cross-examination, not cross-examination that is effective in what-

ever way, and to whatever extent, the defense might wish." *Fensterer, supra,* 474 U.S. at 20, 106 S.Ct. at 294, quoted with approval in *Owens,* 484 U.S. at 559, 108 S.Ct. at 842.

We have examined the cross-examination of the two child witnesses in the present case with these standards in mind. In his questioning of the older child, defense counsel was able to establish, among other things, that she had talked with Dr. Curran several times, that she had been told to stick with her story, that she had spoken with Ms. Hornby, and that she remembered, as she testified in the courtroom, not what her father had actually done, but only what she had told Dr. Curran. She also remembered talking to Dr. Curran about her previous visit with Ms. Hornby, and being asked by Dr. Curran to recount what she had earlier told her mother. This testimony fit in well with counsel's attempt to show that the witness was essentially doing nothing more than repeating statements that had been previously gotten out of her by persistent and suggestive interrogation. The witness was seven years old at the time of the trial. Certainly she was not so easy to cross-examine as an adult would have been, but we have previously approved the District Court's finding that she was a competent witness, sufficiently intelligent to understand, recall, and narrate her perception of what had happened to her.

The younger child was only six at the time of trial. She was more difficult to handle both on direct and on cross, but, again, we believe that there was a sufficient opportunity to cross-examine her to satisfy the Confrontation Clause. She testified she had seen Dr. Curran four times, that she had also spoken to Ms. Hornby, that there was a long time in between her visits with Dr. Curran, that she was trying to remember what she had said to Dr. Curran, but that it was hard. In answer to defense counsel's question whether she knew what a lie was, she made no response. We believe the cross-examination was effective. (We speak, of course, of only what is apparent from the written record. The trial judge was in a much

better position to observe and assess what actually happened in the courtroom.)

The children's recollection of their previous statements and the circumstances under which they were given was imperfect. But the opportunity to cross-examine them, in our judgment, was sufficient to bring this case within the rule of *Owens*. There, a witness remembered nothing about the actual crime. He could remember only that, upon being interviewed by an FBI agent in the hospital, he had identified the defendant as his attacker. He could not remember any other visitors he had received in the hospital, and did not know whether any of them had suggested to him that the defendant was the culprit. The crime victim's out-of-court statement identifying the defendant was allowed into evidence over a Confrontation Clause objection. The "hearsay declarant [was] present at trial and subject to unrestricted cross-examination." *Owens*, 484 U.S. at 560, 108 S.Ct. at 843. Despite the fact that the witness was forgetful, the Supreme Court held that he was sufficiently subject to cross-examination to satisfy the Confrontation Clause.

In *Idaho v. Wright*, the opinion we have been instructed to take as our text, the out-of-court declarant, the alleged child victim, did not testify. 110 S.Ct. at 3143. After conducting a *voir dire* examination of the child, who was three years old at the time, the trial court determined that she could not communicate to the jury. This fact provides the crucial distinction between *Wright* and the present case. Here, both of the out-of-court declarants in question did testify. Both of them were cross-examined. Their youth and imperfect memory made their cross-examination difficult, but we do not believe that it was appreciably more difficult than that faced by defense counsel in *Owens*. Accordingly, after reassessing this entire case in light of

*Wright*, we conclude that the admission of Ms. Hornby's and Dr. Curran's evidence with respect to statements made to them by the two children did not violate the Confrontation Clause of the Sixth Amendment.

### III.

Defendant has made a number of other contentions on appeal. All of them were discussed and rejected in our previous opinion, which is now, except to the extent of the Confrontation Clause issue that the Supreme Court has told us to re-examine, the law of the case. We see no purpose to be served by discussing these issues again, nor does the Supreme Court's order of remand require us to do so. Our previous decision is reinstated, and the judgments of conviction are

Affirmed.

LAY, Chief Judge, dissenting.

I respectfully dissent.

The Supreme Court remanded this case for reconsideration under the principles of *Idaho v. Wright*, —— U.S. ——, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). Under *Wright* the out-of-court statements of the children in this case are far too unreliable and lack any guarantee of trustworthiness. The majority acknowledges that the district court applied a lower standard of reliability than required in *Wright*, but without confronting the seriousness of the children's tainted hearsay statements the majority sidesteps the clear mandate of the Supreme Court. I must respectfully disagree.

The majority avoids discussion of *Wright* because the children of Roy Spotted War Bonnet allegedly were "available" as witnesses and testified at trial.[1] The majority justifies its refusal to follow the mandate of the Court by mechanically relying on *United States v. Owens*, 484 U.S. 554, 108

---

1. At the time the Supreme Court granted certiorari it was evident to the Court that the children "testified" in the present case and that the child in *Wright* did not testify. Issue #2 in the petition for certiorari in this case referred to the children's testimony: "Whether the Court of Appeals violated the petitioner's due process rights

by allowing the government's expert witness to express an opinion on the believability of the child's testimony." Nonetheless, the Supreme Court remanded this case "for further consideration in light of *Idaho v. Wright*." *Spotted War Bonnet v. United States*, —— U.S. ——, 110 S.Ct. 3267, 111 L.Ed.2d 777 (1990).

S.Ct. 838, 98 L.Ed.2d 951 (1988). In *Owens,* relied upon as dispositive by the majority, the Court held that the availability of an out-of-court declarant at trial satisfied the Confrontation Clause even if the declarant could not remember prior statements admitted as hearsay. *Id.* at 561, 108 S.Ct. at 843. The Court reasoned that the Clause required only the *opportunity* for effective cross-examination, and that the defense would have to be satisfied with merely impeaching the declarant with his lack of memory. *Id.* at 559, 108 S.Ct. at 842.

The majority overlooks the fact that *Owens* left open the application of the Confrontation Clause when suggestive identification procedures are involved. As Justice Scalia observed in *Owens:*

> Respondent has argued that this Court's jurisprudence concerning suggestive identification procedures shows the special dangers of identification testimony, and the special importance of cross-examination when such hearsay is proffered. Respondent has not, however, argued that the identification procedure used here was in any way suggestive. There does not appear in our opinions, and we decline to adopt today, the principle that, because of the *mere possibility* of suggestive procedures, out-of-court statements of identification are inherently less reliable than other out-of-court statements.

*Id.* at 560–61, 108 S.Ct. at 843 (citations omitted) (emphasis added).

This case presents more than the mere possibility of suggestive identification pro-

cedures. Furthermore, *Owens* does nothing more than answer the question presented: Whether a witness is deemed unavailable under the Confrontation Clause when he claims to have forgotten the actual events that are the subject of his testimony. Forgetfulness is not the issue here.

In *Wright,* the court considered whether the Confrontation Clause was violated by admission of evidence under Idaho's residual hearsay exception. Idaho Rule Evid. 803(24).[2] The residual exception also was the basis of admissibility in the present case. The residual exception is not a firmly rooted exception to the hearsay rule. *Wright,* 110 S.Ct. at 3147. The Court required a higher standard of admissibility when the residual exception is used to admit out-of-court statements of child abuse victims. I would find *Owens* inapplicable because of the suggestive identification procedures involved in this case. *Owens* aside, *Wright* is clearly on point.

### I.

Applying the *Wright* analysis to the present case, I find the out-of-court statements were made in a suggestive and coercive atmosphere that provided virtually no assurance of reliability.[3] There is a strong possibility that a false memory was created in the girls' minds through suggestion and manipulation by the people who repeatedly interviewed the girls prior to trial. The need to ensure reliability is underscored by the fact that there is *no medical evidence* to support the allegation that either child was abused. The girls' statements consti-

2. Assuming, arguendo, that the children are "available" in this case as the majority urges, the statements of the children to the government witnesses should be excluded as hearsay under Fed.R.Evid. 803(24) because they lack indicia of reliability and trustworthiness as required by the second prong of Rule 803(24).

3. Under *Wright* the ultimate inquiry by reference to the totality of the circumstances surrounding the statement is to determine whether the children were telling the truth when they made their out-of-court statements. *Wright* necessarily overrules our cases that admitted such hearsay without this rigorous analysis. *See, e.g., United States v. Shaw,* 824 F.2d 601, 609–10

(8th Cir.1987), *cert. denied,* 484 U.S. 1068, 108 S.Ct. 1033, 98 L.Ed.2d 997 (1988); *United States v. DeNoyer,* 811 F.2d 436, 438 (8th Cir.1987); *United States v. Cree,* 778 F.2d 474, 478 (8th Cir.1985). Until now we have followed "the modern rule that in cases involving young child witnesses, the administration of justice is served by the admission of statements made in a more relaxed environment without the possible harm of traumatic courtroom encounter." *DeNoyer,* 811 F.2d at 438. After *Wright* a public policy basis for admitting a child's hearsay testimony in an abuse case will not suffice; the court now must find particularized guarantees of trustworthiness surrounding the statement.

tute the only evidence against the defendant.

*Wright* requires us to consider the totality of circumstances under which a hearsay statement was made in determining the reliability of that statement. 110 S.Ct. at 3150. Thus, we must consider that Dr. Curran was not a treating physician but was paid by the Federal Bureau of Investigation to interview the children. The likelihood of her bias in questioning cannot be discounted, for as one commentator states: "[t]he interviewer is most likely trying to get the child to admit what the interviewer thinks is 'the truth' in order to protect the child's best interest." Feher, *The Alleged Molestation Victim, the Rules of Evidence, and the Constitution: Should Children Really be Seen and Not Heard?*, 14 Am.J.Crim.L. 227, 237–38 (1988).

We further must consider that although Skylene (age 4½ at the time) allegedly stated in July, 1986, that the defendant abused her, she subsequently contradicted that statement on several occasions. Tr. at 150–52. There were several forces at work operating to twist both girls' testimony. Skylene was threatened by her uncle Ernie, who was charged for sexual abuse of the children. In an effort to clear himself, Ernie told Skylene that she must name the defendant as the abuser. Tr. at 150.

Additionally, Dr. Curran effectively threatened the children, suggesting that they would remain in a foster home if they did not "tell the truth" and implicate the defendant. Dr. Curran testified:

Skylene was very sad. She missed her mother and did want to be back home and she was confused, talked about feeling confused.

\* \* \* \* \* \*

[W]e were talking about her wanting to go home and I said do you know what

has to happen for you to go home and she says I have to tell the truth.

Tr. at 169–70.

Dr. Curran also used anatomically correct dolls in her interviews with the children. Many commentators have expressed concern that repeated use of the dolls can be highly suggestive. Christiansen, *The Testimony of Child Witnesses: Fact, Fantasy, and the Influence of Pretrial Interviews*, 62 Wash.L.Rev. 705, 711 (1987) (use of dolls may "stimulate fantasy and not recall"); Feher, *supra*, at 237–38 (use of dolls may cause permanent memory alteration); Levy, *Using "Scientific" Testimony to Prove Child Sexual Abuse*, 23 Fam.L.Q. 148 (1989) (use of dolls may give factfinder false impression that results are "scientific").[4]

The overall atmosphere of the interviews was not conducive to generating truthful responses from the girls. These very young children already were confused and scared as a result of the turmoil in their home. Their home had been violently disrupted as their mother moved to a women's shelter and the girls were placed in foster care. Interviewers manipulated them with toys and candy one moment and scare tactics the next. Tr. at 147–48, 171–73, 186. Dr. Curran stated she would "move with easy feelings and then move into the more scary feelings, sad and scared and lonely and so forth." Tr. at 148. Put through a whirlwind of emotions, the children then were repeatedly questioned. The children sometimes implicated Ernie and sometimes named the defendant, but were encouraged to name the defendant. Dr. Curran's account of the February 24, 1987, interview with Annie illustrates the coercive atmosphere:

[Annie] got really frightened looking, quiet, kind of withdrawn. But she looked—her eyes went immediately ... to the groin area of the male doll. She didn't say anything. She just looked at it.

---

4. Results from use of the dolls may be particularly unhelpful in determining the identity of the abuser when there are several suspects. In this case, the children's ability to demonstrate what happened to them through use of the dolls does not distinguish between possible abuse by the defendant or by Ernie. The children exhibited difficulty in differentiating between the defendant and Ernie. Tr. at 108.

. . . .

I said Annie, could you tell mom who was doing that. It was obvious, she had the doll with the penis in the vagina. She said Ernie, I said Annie, that isn't what you just said, you know, are you scared to tell mom. . . . I said Annie, you didn't tell me that Ernie did it. You told me dad did it. Didn't you want to tell mom. It's important that you're afraid to tell mom. She just . . . said I don't want my daddy to go to jail.

Tr. at 184–85.

Considering the tender age and strained emotional condition of the children, the possibility of bias inherent with a prosecution-paid interviewer, the use of the controversial anatomically correct dolls, the contradictory statements of the children, and the overall suggestive atmosphere of the interviews, I find nothing in the record that would approach a particularized guarantee of trustworthiness as required under *Wright.*

### II.

The majority does not contest this conclusion for it does not even reach the reliability issue, although it appears to concede at least that remand would be required to determine reliability if *Wright* applied. *Ante* at 1473. Undoubtedly, the availability of the declarant at trial goes a long way toward obviating Confrontation Clause concerns. *See California v. Green,* 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). However, when the declarants are young, impressionable children (aged 2½ and 4½ at the time of the first suggestive interview), and the circumstances surrounding the out-of-court statement are as seriously suggestive as in the present case, it is clearly placing form over substance to urge that the children were available for any type of effective cross-examination.[5]

---

**5.** *Cf. Wright,* 110 S.Ct. at 3152 ("'If there is evidence of prior interrogation, prompting, or manipulation by adults, spontaneity may be an inaccurate indicator of trustworthiness.'" (quotation omitted)).

**6.** The trial court in this case improperly found Annie competent to testify despite the prosecution's failure to establish sufficient foundation.

Unlike *Owens* this case is not about a forgetful witness. The children in this case were 2½ and 4½ years old at the time of the alleged abuse.[6] The problems associated with their testimony go far beyond the forgetful witness scenario addressed in *Owens.* The court's task is to extract the truth from the murkiness of a young child's memory; a memory that can be shrouded by the trauma of sexual abuse, distorted by the suggestive tactics of the prosecution's interviewing tactics, and further affected in the intimidating setting of a courtroom. In this case we consider the possibility of an altered memory, not the lack of memory. As the majority concedes, "simply putting a child on the stand, regardless of her mental maturity, is not sufficient to eliminate all Confrontation Clause concerns." *Ante* at 1474. If immaturity can render a child witness unavailable, then surely the memory-altering effects of suggestive pre-trial interviewing can have a similar effect.

In this case suggestive interviewing procedures resulted in the identification of the defendant by both children. The interviewing techniques run the serious risk of altering the memory of the children. *See Maryland v. Craig,* —— U.S. ——, 110 S.Ct. 3157, 3175, 111 L.Ed.2d 666 (1990) (Scalia, J., dissenting) ("Some studies show that children are substantially more vulnerable to suggestion than adults, and often are unable to separate recollected fantasy from reality."); *see, e.g.,* Feher, *supra,* at 237–38. The prosecution in effect has created its own "forgetful" witness, who may remember only what the interviewer desired to elicit.

The key to ascertaining whether suggestive procedures foreclose effective cross-examination is to determine whether the goals of confrontation can be achieved with

*United States v. Spotted War Bonnet,* 882 F.2d 1360, 1372–74 (8th Cir.1989) (Lay, C.J., dissenting), *vacated,* —— U.S. ——, 110 S.Ct. 3267, 111 L.Ed.2d 777 (1990). Skylene's recollections only of her conversations with Dr. Curran and not the actual events placed her competency in doubt as well. *Id.*

regard to the witness. The three procedural benefits of confrontation are 1) testimony sworn under oath, 2) the jury's ability to observe the witness's demeanor, and 3) cross-examination. *See Green,* 399 U.S. at 158, 90 S.Ct. at 1935. The value of the oath and observation of the witness's demeanor is significantly diminished when the witness's memory has been altered, for the witness then has a sincere belief in her testimony. In a similar situation involving hypnotically refreshed testimony, the Fifth Circuit found the value of cross-examination seriously eroded:

> Separating true memory from hypnotic pseudomemory is impossible for professionals trained in hypnosis and even the subjects themselves. It can be no less difficult for laymen employing traditional legal methods. The proposition that the opportunity to cross-examine the previously hypnotized witness will allow the opposing party adequate opportunity to display the inaccuracy of his testimony is rendered dubious by the nature of hypnotic influence. Once a witness makes a recitation under hypnosis, his confidence in that supposed memory—whether genuine or invented—is greatly strengthened. The witness then may have an unshakeable subjective conviction that gives his account on the witness stand the imprimatur of absolute confidence. Indeed, in a criminal trial, the witness's resultant undue confidence might violate the defendant's constitutional right to confront and cross-examine witnesses, for an absolute conviction in the accuracy of his memory might make it "impossible to cross-examine [the] witness in any meaningful way."

*United States v. Valdez,* 722 F.2d 1196, 1202 (5th Cir.1984) (footnotes omitted).[7]

Just as with the post-hypnotic statements in *Valdez,* the coercive practices that shaped the child's hearsay statements may continue to affect the child's testimony at trial.[8] Although cross-examination may be effective in establishing that a witness has a poor memory, it is far less useful in demonstrating that a witness's memory has been altered. Although the forgetful witness can testify on cross-examination that he cannot remember the actual events, the memory-altered witness may not even know that she has been subjected to suggestive or coercive pre-trial interviews.[9] The child, toward whom the jury's sympathies naturally will run, will testify in a believable and convincing fashion. Thus, cross-examination after the suggestive interview does not provide for adequate confrontation because the accused is deprived of the opportunity to confront the untainted witness.

Furthermore, unlike the forgetful witness, these child witnesses have been tainted by the prosecution to its own advantage. Inquiry into reliability thus serves as a prophylactic against prosecutorial abuse and ensures that traditional evidentiary concerns are met. *See* 4 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 800[04] at 800–21 (1990) (one "main school of thought sees the confrontation clause as a prophylactic rule which insists on a standard of admissibility designed to protect the criminal defendant from having produced against him evidence which poses the same kind of dangers the hearsay rule is designed to prevent" (quoting Graham, *The Right of Confrontation and the Hearsay Rule: Sir Walter Raleigh Loses Another One,* 8 Crim.L.Bull. 99 (1972))). The children in this case are unable to provide

---

**7.** This court has adopted a rule requiring a pre-trial hearing to "assess the effect of hypnosis upon the reliability of the testimony before making a decision on admissibility." *Sprynczynatyk v. General Motors Corp.,* 771 F.2d 1112, 1122 (8th Cir.1985), *cert. denied,* 475 U.S. 1046, 106 S.Ct. 1263, 89 L.Ed.2d 572 (1986).

**8.** *Cf. United States v. Wade,* 388 U.S. 218, 229, 87 S.Ct. 1926, 1933, 18 L.Ed.2d 1149 (1967) ("[i]t is a matter of common experience that, once a witness has picked out the accused at the line-

up, he is not likely to go back on his word later on, so that in practice the issue of identity may (in the absence of other relevant evidence) for all practical purposes be established there and then, before the trial.").

**9.** Indeed, it was established at trial that the children did not remember the actual events but recalled only the meetings with Dr. Curran. Tr. at 38.

testimony apart from the suggestion and manipulation they experienced.

The policy of the Confrontation Clause, as interpreted by the Supreme Court, mandates an inquiry into reliability in this situation. The Court has always maintained that the Confrontation Clause is more than a simple rule of preference for live testimony. In *Owens*, the Court "recognized a partial (and somewhat indeterminate) overlap between the requirements of the traditional hearsay rule and the Confrontation Clause." 484 U.S. at 560, 108 S.Ct. at 843.

The Court has interpreted the Confrontation Clause through a case by case approach. *See, e.g., United States v. Inadi*, 475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986). Here the circumstances require some inquiry into the reliability of out-of-court statements irrespective of the technical availability of the declarant. This is especially true when identification of the defendant is tainted by suggestive manipulation of young children. To apply the general rule of availability under *Owens* in this circumstance makes mockery of the principles behind the Confrontation Clause. Just as the Clause has not been construed literally to exclude all out-of-court statements, *see Wright*, 110 S.Ct. at 3145, the Clause must be construed to require more than a mere literal confrontation in which defendant and declarant do little more than sit in the same room. Although inquiry into reliability may not be required in every case, *see Bourjaily v. United States*, 483 U.S. 171, 182, 107 S.Ct. 2775, 2782, 97 L.Ed.2d 144 (1987), *Owens* implies that such inquiry should be made when the out-of-court statements are derived from suggestive identification procedures. As detailed above, there are no indicia of reliability associated with the out-of-court statements in this case, and several strong indications of unreliability. The Clause's "underlying purpose [is] to augment the factfinding process by ensuring the defendant an effective means to test adverse evidence." *Roberts*, 448 U.S. at 65, 100 S.Ct. at 2539. If the defendant is to have "realistic weapons" against the out-of-court statements of alleged child abuse victims, *see Owens*, 484 U.S. at 560, 108 S.Ct. at

843, some inquiry into the reliability of those statements is essential.

This premise is underscored by the Supreme Court's order in this case. The Court remanded the case for consideration in light of *Wright*, which is a Confrontation Clause case. We must presume the Court was aware that the child declarants in this case testified at trial. The Court's order at a minimum implies that the Clause has some application here. Further, the strict scrutiny of circumstances surrounding the reliability of the statements imposed by the Court in *Wright* makes manifest the Court's strong concern for accurate factfinding in child abuse cases. The Court's development of the Confrontation Clause has been ad hoc, "building on past decisions, drawing on new experience, and responding to changing conditions." *Roberts*, 448 U.S. at 64, 100 S.Ct. at 2538. *Wright* makes clear that child abuse cases are sui generis. The unique problems associated with these cases merit higher scrutiny. Thus, mechanical application of *Owens* cannot obviate any consideration of reliability.

### III.

Even if concern for fundamental fairness is somehow obviated under the Confrontation Clause due to the technical availability of the declarant, it cannot be similarly ignored under the Due Process Clause. The Court has held that "reliability is the linchpin in determining the admissibility of identification testimony." *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977). With regard to out-of-court identifications, "the primary evil to be avoided is 'a very substantial likelihood of irreparable misidentification.'" *Neil v. Biggers*, 409 U.S. 188, 198, 93 S.Ct. 375, 381, 34 L.Ed.2d 401 (1972). Under the Due Process Clause this court must consider "whether under the 'totality of the circumstances' the identification was reliable" even though the procedures were suggestive. *Id.* at 199, 93 S.Ct. at 382. As described above, I find the procedures in this

case would not meet even this lower standard.

\* \* \*

Application of the Confrontation Clause has always required balancing of the competing interests of effective law enforcement and accurate factfinding. *Roberts*, 448 U.S. at 64, 100 S.Ct. at 2538. Use of the Due Process Clause entails a similar accommodation to the same competing interests. *Brathwaite*, 432 U.S. at 111–12, 97 S.Ct. at 2251–52. Neither law enforcement nor the defendant are served, however, by admission of suggestive identifications without even considering their reliability. The majority's mechanical application of *Owens* allows these suggestive out-of-court identifications into evidence without ever considering their reliability under the Confrontation Clause. In light of the Court's concern for reliability with regard to identification testimony and particularly with regard to child abuse cases, analysis of reliability is necessary here. I dissent.