85 F.3d 631
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Alvin JENKINS, Petitioner-Appellant,
v.
Gary R. McCAUGHTRY, Respondent-Appellee.
 No. 95-1153.
 United States Court of Appeals, Seventh Circuit.
 Submitted April 24, 1996.*
Decided May 7, 1996.
 
 Before FAIRCHILD, COFFEY and DIANE P. WOOD, Circuit Judges.
 
 ORDER
 
 1
 After a jury trial in state court, Alvin Jenkins was convicted for first-degree murder and sentenced to life in prison. On direct appeal, his conviction was affirmed by the Court of Appeals of Wisconsin. State v. Jenkins, 483 N.W.2d 262 (Wis.App.1992). The Supreme Court of Wisconsin denied Jenkins's petition for review, 490 N.W.2d 22 (Wis.1992) (table), and the United States Supreme Court denied certiorari, 113 S.Ct. 608 (1992). Jenkins then filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, presenting the constitutional issue raised before the Wisconsin courts: whether the Confrontation Clause of the Sixth Amendment was violated by the admission of testimony about an out-of-court statement which identified Jenkins as the killer. The district court denied the petition, and Jenkins appeals. We affirm.
 
 
 2
 At Jenkins's trial, the state called the victim's son to the witness stand. The boy was three years old at the time of the murder, and seven years old when he testified. On direct examination, the boy's entire testimony relating to the murder was as follows:
 
 
 3
 Q. What is your mother's name?
 
 
 4
 A. Carol.
 
 
 5
 Q. Do you remember what happened to your mother?
 
 
 6
 A. Yes.
 
 
 7
 Q. What happened to your mother?
 
 
 8
 A. She died.
 
 
 9
 Q. Do you remember when?
 
 
 10
 A. No.
 
 
 11
 Q. Do you remember anything about that time?
 
 
 12
 A. No.
 
 
 13
 Q. Do you remember anything about living in Milwaukee during that time?
 
 
 14
 A. Yes.
 
 
 15
 Q. What do you remember about that time?
 
 
 16
 A. Well me and my sister was upstairs. And then we came downstairs, and then lady said look. And then we ran back upstairs, and then we was looking out the door.
 
 
 17
 Q. Looking out the door at what?
 
 
 18
 A. My mother.
 
 
 19
 Q. What did you see, do you remember?
 
 
 20
 A. No.
 
 
 21
 Q. Do you remember what date that was?
 
 
 22
 A. No.
 
 
 23
 Q. Do you remember much else about living in Milwaukee back then?
 
 
 24
 A. No.
 
 
 25
 * * *
 
 
 26
 Q. And what you've told the jury is about what you remember about when you lived in Milwaukee, is that correct?
 
 
 27
 A. Yes.
 
 
 28
 At this point, the prosecutor asked the court to declare the boy "unavailable" as a witness for purposes of the rules of hearsay--which the court did--and then ended the direct examination. The court asked defense counsel if he had questions for this witness, and counsel responded that he had no questions.
 
 
 29
 The state called its next witness, Judge John J. DiMotto. Judge DiMotto testified to his interview of the boy four days after the murder, three-and-a-half years prior to trial, when Judge DiMotto was an assistant district attorney. Prior to his testimony, Judge DiMotto had refreshed his recollection by reviewing the police report of the interview, which had been prepared by two police detectives who were in the room and took notes during the interview. Judge DiMotto testified that the boy told him that he saw Alvin (i.e., Jenkins) fighting with the boy's mother. According to Judge DiMotto's testimony, the boy then said that "Alvin got the gun. I seen it. I seen Alvin shoot mama. That she fell to the floor. [ ...] [I]t sounded hard. [ ...] [M]ama said stop and then the gun went off [ ...] bang."
 
 
 30
 In United States v. Owens, 484 U.S. 554 (1988), the Supreme Court held that the Confrontation Clause of the Sixth Amendment does not bar "testimony concerning a prior, out-of-court identification when the identifying witness is unable, because of memory loss, to explain the basis of the identification." Id. at 555-56. In the trial at issue in Owens, the identifying witness testified that he clearly remembered identifying the defendant as his assailant in an interview during his recovery from the attack, but did not remember seeing his assailant, or whether anyone had suggested to him that the defendant was the assailant. Id. at 556. Owens decided that in such a situation, where the witness in effect testifies, "I don't remember whether this is the man who assaulted me, but I told the police I believed so earlier," the witness's inability to remember anything further about the underlying events or the out-of-court statement does not have Sixth Amendment consequence. Id. at 558-60.
 
 
 31
 Furthermore, Owens held that "when a hearsay declarant is present at trial and subject to unrestricted cross-examination," the admission of the hearsay itself does not violate the Confrontation Clause, regardless of whether the hearsay carries "indicia of reliability" or "particularized guarantees of trustworthiness." Id. at 560 (quotations omitted). The Court left open the possibility that admission of hearsay in a situation like Owens's case could implicate the Confrontation Clause if suggestive procedures were used to elicit the statement. See id. at 561. The Court indicated, though, that the "mere possibility of suggestive procedures" does not raise such a problem. See id.
 
 
 32
 In Jenkins's case, the victim's son testified, in effect, that he did not remember the events of his mother's death. To that extent, the boy was "unavailable" to testify about anything relevant to the case. However, the boy was not asked whether he remembered giving a statement after his mother died, or whether he remembered anything he said or believed about the events of his mother's death. Had the boy been asked such questions and answered "no" to all of them, Jenkins could argue that the boy was completely unavailable to be confronted concerning the statement, much as a witness who asserts a privilege not to answer any questions cannot be confronted with his prior statement. See Douglas v. Alabama, 380 U.S. 414, 419-20 (1965). However, we need not decide whether such an argument might succeed.[1] The boy was not in fact asked whether he remembered saying or believing anything about the events in question, even though defense counsel had the opportunity to do so. We will not presume that the boy did not remember something about his statements or beliefs, such that he could be cross-examined regarding those statements or beliefs. For all we know, the boy might have testified that he remembered something, just as the victim in Owens testified that he remembered his identification of the witness but not the reasons for it.
 
 
 33
 Jenkins's claim, as he has presented it, cannot succeed in light of Owens. "The Confrontation Clause guarantees only an opportunity for effective cross-examination," not a successful cross-examination in actuality. Owens, 484 U.S. at 559-60 (quotations omitted) (emphasis in original). Jenkins does not show that he lacked the opportunity for effective cross-examination of the victim's son. He makes only a conclusory allegation in his briefs that the manner in which the boy was interviewed was unduly suggestive, and does not indicate how the interview was suggestive. We conclude that the admission of testimony about the boy's out-of-court statement did not violate the Confrontation Clause.[2]
 
 
 34
 The judgment is AFFIRMED.
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary; accordingly, the appeal is submitted on the briefs and the record. See Fed.R.App.P. 34(a); Cir.R. 34(f)
 
 
 [1]
 Likewise, we need not decide whether a witness might be completely unavailable in certain circumstances because of youth or incompetence. See United States v. Spotted War Bonnet, 933 F.2d 1471, 1473-75 (8th Cir.1991), cert. denied, 112 S.Ct. 1187 (1992). Jenkins notes that the boy testified that he did not remember the events of his mother's death, and argues that children in general are impressionable and easily confused. However, Jenkins does not show--and it is not apparent from the boy's testimony--how this particular boy lacked the ability to be a competent witness
 
 
 [2]
 We also note that the state introduced a substantial amount of other evidence against Jenkins, including, most notably, his friend Gerald Clark's testimony that Jenkins told him how he (Jenkins) committed the murder