In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-1181

DONALD COOKSON,

*Petitioner-Appellant*,

*v.*

GREGORY SCHWARTZ,
Acting Warden,

*Respondent-Appellee*.

Appeal from the United States District Court
for the Central District of Illinois.
No. 1:06-cv-03255-RM—**Richard Mills**, *Judge*.

ARGUED NOVEMBER 5, 2008—DECIDED FEBRUARY 23, 2009

Before EASTERBROOK, *Chief Judge*, and RIPPLE and
ROVNER, *Circuit Judges*.

RIPPLE, *Circuit Judge*. Donald Cookson was convicted
in Illinois state court of predatory criminal sexual
assault of a child. His conviction was affirmed by the
Illinois Appellate Court and the Supreme Court of Illinois.
He filed a petition for a writ of certiorari in the Supreme
Court of the United States. That petition was denied.
Mr. Cookson then filed a petition for a writ of habeas

corpus with the United States District Court for the Central District of Illinois. The district court denied the petition. We granted Mr. Cookson a certificate of appealability, and we now affirm the district court's denial of his petition.

# I

## BACKGROUND

A.C., the alleged victim in this case, was born in October 1992. For the first seven years of her life, she lived with her mother, Judith Cookson, and her mother's husband, Donald Cookson. Everyone involved thought that A.C. was Mr. Cookson's biological daughter, until a DNA test in mid-2000 revealed that A.C.'s actual father was a man named Rick Aston.

A.C. lived with her mother and Mr. Cookson until August 1999, when Judith Cookson left Mr. Cookson's home. She took A.C. with her and moved in with Aston. One day, Aston and A.C. disappeared. Judith and Mr. Cookson filed a police report stating that Aston had abducted A.C. Aston soon returned with A.C. and turned her over to authorities, who returned her to Judith and Mr. Cookson.

Soon thereafter, A.C. began alleging that Judith and Mr. Cookson had abused her sexually. In January 2000, she told Dorothy Rice, an investigator with the Illinois Department of Children and Family Services ("DCFS"), that Mr. Cookson gave her marijuana, "r[a]n bath water in the tub, put her in the tub and he hump[ed] on her."

Supp. Vol. V, 9-10. A.C. also told Rice that Mr. Cookson "takes his little thingy when she is in the tub and he put it in her butt." *Id.* at 10. A.C. further claimed that Mr. Cookson "humped" on her "all the time." *Id.* She also told Rice that she wanted to live in a "clean place" and no longer wanted to live with Judith and Mr. Cookson, because they fed her "nasty food like dogs or cats would eat." *Id.* at 19.

The next day, A.C. was placed in a foster home. She told Laverne Landers, her foster mother, that she never was going home to Judith and Mr. Cookson because both Mr. Cookson and Judith had engaged in sexual acts with her. A.C. said that she would stay with Landers forever and that Mr. Cookson and Judith were "going to jail." Supp. Vol. III, 60-61. The next day, she repeated these allegations to police detective Richard Wiese and DCFS investigator Timothy Gonzalez. A.C. told Gonzalez and Detective Wiese that the abuse had taken place when she was six years old. She also told Gonzalez that she did not want to live with Judith and Mr. Cookson because of what they had done to her.

On February 3, 2000, A.C. was examined by Dr. Victoria Nichols-Johnson, an obstetrician-gynecologist at the Southern Illinois University Medical Center. The examination revealed no signs of physical trauma, but A.C. told Dr. Nichols-Johnson that her mother had had oral sex with her. A.C. also claimed that Mr. Cookson had "assaulted [her] vaginally," but she denied any contact between Mr. Cookson's penis and her anus. Supp. Vol. VI, 110-111. This denial conflicted somewhat with her earlier

statements. Based on A.C.'s allegations, Mr. Cookson was charged with predatory criminal sexual assault of a child and aggravated criminal sexual abuse.

In July 2000, after she had been in foster care for six months, A.C. alleged that Rick Aston had inserted his finger into her vagina. DCFS investigated and found A.C.'s report to be "indicated," meaning that there was credible evidence that it was true. Aston appealed this finding. DCFS reviewed the allegation and reclassified it as "unfounded."

The case against Mr. Cookson went to trial in 2001. Mr. Cookson filed a motion in limine asking the court to exclude the use of A.C.'s out-of-court statements at trial on the ground that they were unreliable hearsay. The court denied the motion. The prosecution filed a motion in limine asking the court to preclude the use of testimony about A.C.'s allegation against Aston. The court granted this motion.

At trial, the prosecution called Rice, Landers, Wiese, Gonzalez and Dr. Nichols-Johnson as witnesses. These witnesses testified about A.C.'s statements accusing Mr. Cookson of sexual abuse. A.C. also appeared as a prosecution witness and described several incidents during which, she claimed, Mr. Cookson performed sexual acts on her. On cross-examination, Mr. Cookson's counsel asked about her statements to Wiese and Gonzalez. A.C. testified that she did not remember making the statements or speaking to Wiese and Gonzalez.

At the close of the prosecution's case, Mr. Cookson made an offer of proof regarding A.C.'s sexual abuse

allegation against Aston. He stated that, if allowed, he would have called Aston as a witness and that Aston would have testified that the allegation was false.

The jury found Mr. Cookson guilty of predatory criminal sexual assault, and the court sentenced him to twenty-five years in prison. Mr. Cookson appealed to the Illinois Appellate Court, which affirmed the conviction over one dissent. *People v. Cookson*, 780 N.E.2d 807 (Ill. App. Ct. 2002). He then appealed to the Supreme Court of Illinois, which granted review and affirmed the Appellate Court's decision. *People v. Cookson*, 830 N.E.2d 484 (Ill. 2005).

Mr. Cookson filed a petition for a writ of habeas corpus in the United States District Court for the Central District of Illinois, alleging that the trial court's admission of A.C.'s out-of-court statements, and its exclusion of evidence about her accusation of Aston, violated his rights under the Confrontation Clause of the Sixth Amendment. The district court denied the petition. Mr. Cookson then petitioned this court for a certificate of appealability. We granted the certificate and now affirm the district court's denial of habeas relief.

## II

## DISCUSSION

We review de novo the district court's denial of habeas corpus relief. In reviewing a state court's decision, we may grant habeas relief only if the state's adjudication of an issue:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The relevant state-court decision is that of the last state court to review the issue—here, the Supreme Court of Illinois. *Williams v. Bartow*, 481 F.3d 492, 497-98 (7th Cir. 2007) ("[W]e, like the district court, must evaluate the decision of the last state court to have adjudicated the petitioner's claim on the merits.").

## A.  A.C.'s Hearsay Statements

The Sixth Amendment provides that a criminal defendant shall have the right "to be confronted with the witnesses against him." Mr. Cookson submits that the admission of A.C.'s statements to Wiese and Gonzalez violated the Confrontation Clause because A.C. could not remember making the statements—or, indeed, ever speaking to Wiese and Gonzalez at all—and therefore he could not cross-examine her about them. He relies upon *Crawford v. Washington*, 541 U.S. 36 (2004), in which the Supreme Court held that the Confrontation Clause bars, in criminal cases, the admission of testimonial hearsay statements made by witnesses who are unavailable at trial. Mr. Cookson submits that, although A.C. testified at trial, she was not "available," for Confrontation

Clause purposes, because she did not remember making the statements and therefore could not be cross-examined about them.

Mr. Cookson does not cite any cases holding that the Confrontation Clause bars admission of hearsay statements in circumstances such as these. He contends, however, that dicta in two federal court of appeals opinions support his position. In *United States v. DiCaro*, 772 F.2d 1314, 1323 (7th Cir. 1985), we wrote that "a witness's total amnesia concerning a prior statement will often make him not subject to cross-examination" for Confrontation Clause purposes. In *United States v. Spotted War Bonnet*, 933 F.2d 1471, 1474 (8th Cir. 1991), the Eighth Circuit opined that if a child witness "is so young that she cannot be cross-examined at all, or if she is simply too young and too frightened to be subject to a thorough direct or cross-examination," the child's mere physical presence on the witness stand will not satisfy the Confrontation Clause's availability requirement.

The State responds that there is no Confrontation Clause problem with admission of the statements because Mr. Cookson was able to cross-examine A.C. at trial. The State points to language in *Crawford* stating that "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." *Crawford*, 541 U.S. at 59 n.9. That language is not dispositive, however, because the Supreme Court elaborated on this statement two sentences later: "[T]he Clause does not bar admission of a statement so long as the declarant is present

at trial *to defend or explain it.*" *Id.* (emphasis added). Mr. Cookson's contention, of course, is that A.C.'s lack of memory made her unable to defend or explain her statements.

The State also submits that Mr. Cookson's argument is foreclosed by the Supreme Court's decision in *United States v. Owens*, 484 U.S. 554 (1988), and by our decision in *United States v. Keeter*, 130 F.3d 297 (7th Cir. 1997). In *Owens*, the Supreme Court approved the admission of an out-of-court statement by a victim-witness who remembered making the statement but did not remember its substance. In *Keeter*, a witness signed an affidavit before trial that implicated the defendant in a scheme to sell amphetamine in prison. At trial, however, the witness feigned amnesia and claimed to have no memory of making the statement or of the events described in the statement. The trial court allowed the prosecution to enter the affidavit into evidence. On appeal, we held that admission of the affidavit did not violate the Confrontation Clause even though the defendant was unable to question the witness about his statement. We read *Owens* as holding that "the confrontation clause . . . is satisfied when the witness must look the accused in the eye in court," and we also noted that shortcomings in the witness' memory can be pointed out to the jury. *Keeter*, 130 F.3d at 302.

Finally, the State submits that Mr. Cookson's reliance on *DiCaro* and *Spotted War Bonnet* is misplaced. It contends that *DiCaro* does not help Mr. Cookson, for three reasons. First, the court in *DiCaro* actually held that the

Confrontation Clause *was not* violated in that case; it merely speculated about what might happen in some future case. Second, the witness in *DiCaro* could not recall *either* the content of the statement or the underlying facts the statement described. Here, A.C. did not remember making the statements but *did* remember—and was available to be cross-examined on—the instances of alleged abuse that she described in the statements. Finally, *DiCaro* was decided prior to *Owens* and *Keeter*, and the dictum on which Mr. Cookson relies appears to be inconsistent with the holdings of those cases.

The State contends that Mr. Cookson's reliance on *Spotted War Bonnet* is unavailing as well. The discussion in that case refers to child witnesses who are "too young" or "too frightened" to be cross-examined—not witnesses who, like A.C., are fully capable of being cross-examined but whose memories are incomplete. In fact, in *Spotted War Bonnet,* the court specifically differentiated the former from the latter. The court stated: "The children's recollection of their previous statements and the circumstances under which they were given was imperfect. But the opportunity to cross-examine them, in our judgment, was sufficient to bring this case within the rule of *Owens*." *Spotted War Bonnet,* 933 F.2d at 1475.

Mr. Cookson attempts to distinguish his case from *Owens* by pointing out that the defendant in that case was able to question the witness about the circumstances surrounding the statement—for example, whether the witness recalled that he was lying at the time or was uncertain when he made the statement. In this case,

however, Mr. Cookson submits that he had no such opportunity because A.C. recalled neither making the statements nor meeting with Wiese and Gonzalez. Therefore, Mr. Cookson argues, the admission of A.C.'s statements violated the Confrontation Clause even though the admission of the statement in *Owens* did not.

We agree with the State that *Owens* and *Keeter* are dispositive here. Indeed, Mr. Cookson actually had a much better chance to conduct an effective cross-examination than did the defendants in those cases. A.C., unlike the witnesses in *Owens* and *Keeter,* could remember the underlying events described in the hearsay statements. To the extent that A.C.'s testimony at trial was consistent with her testimony in her statements to Wiese and Gonzalez, cross-examination on the trial testimony—which Mr. Cookson had a full opportunity to conduct—was effectively cross-examination on the hearsay statements as well. And to the extent that her testimony was inconsistent with her earlier statements, Mr. Cookson was free to point out the inconsistencies to the jury. In sum, Mr. Cookson had ample opportunity to confront his accuser at trial. If the defendants in *Owens* and *Keeter* had a constitutionally adequate opportunity to cross-examine the witnesses against them, then Mr. Cookson certainly did as well. Accordingly, we cannot accept his argument that the state court acted contrary to clearly established federal law as determined by the Supreme Court of the United States when it affirmed the admission of A.C.'s statements at trial.

### B.  A.C.'s Prior Allegation against Aston

Mr. Cookson also submits that the Confrontation Clause guaranteed him the right to cross-examine A.C. about her allegation that Aston sexually abused her. In his view, DCFS' ultimate classification of the allegation as "unfounded" establishes that it was false. He submits that "in compelling cases such as his, the constitutional right to confront an accuser encompasses the right to introduce extrinsic evidence that a sexual assault or abuse complainant made a prior unfounded allegation of sexual assault or abuse against another person." Appellant's Br. 25. In support of this contention, Mr. Cookson relies upon two cases: *Redmond v. Kingston*, 240 F.3d 590 (7th Cir. 2001), and *White v. Coplan*, 399 F.3d 18 (1st Cir. 2005).

In *Redmond*, we granted habeas relief to a defendant who had sought unsuccessfully to question the alleged victim about a prior false allegation of statutory rape. The defendant in that case was a counselor at a center for drug-addicted teens; his accuser was one of the center's residents. Eleven months before the alleged rape by the defendant, the alleged victim had accused another man of raping her. Shortly after making that allegation, she admitted that she had fabricated the allegation "in order to get her mother's attention." *Redmond*, 240 F.3d at 591. The trial court barred the defendant from cross-examining the alleged victim on the prior accusation. On habeas review, we held that the denial violated the Confrontation Clause:

> The fact that the girl had led her mother, a nurse, and the police on a wild goose chase for a rapist merely to get her mother's attention supplied a powerful reason for disbelieving her testimony eleven months later about having sex with another man, by showing that she had a motive for what would otherwise be an unusual fabrication.

*Id.* at 591-92.

In *White*, a defendant accused of sexually assaulting two young girls sought to cross-examine them on several prior allegations of sexual assault that the girls had made against other people. The defendant presented information to the court showing that the prior allegations were false. The trial court did not allow the defendant to pursue this avenue of cross-examination, and he was convicted. The state supreme court held that, although the defendant had established a "reasonable probability" that the prior accusations had been false, he had not met the state-law requirement of "demonstrable falsity." *White*, 399 F.3d at 22. The court therefore affirmed the conviction. The First Circuit granted habeas relief; it held that the defendant should have been allowed to use the prior allegations to impeach the alleged victims as to their motive in accusing him, even though no motive was apparent: "In our case the nature of the motive may be unknown; but if the prior accusations are similar enough to the present ones and shown to be false, a motive can be inferred and from it a plausible doubt or disbelief as to the witness' present testimony." *Id.* at 26.

Mr. Cookson contends that evidence of A.C.'s (allegedly) false allegation against Aston was important to his defense because it "showed a tendency on [A.C.'s] part to confabulate false accusations of sexual misconduct in order to punish or manipulate adults in her life." Appellant's Br. 28. Mr. Cookson's theory is that A.C. falsely accused him of abuse in order to punish him for failing to protect her and to manipulate authorities into allowing her to remain in foster care. He argues that the prior false accusation is relevant because it supports this motive and establishes that A.C. was willing and able to lie about sexual abuse by adults who were in a parental role.

The State acknowledges that a criminal defendant has a right to cross-examine witnesses in order to show bias or motive to lie, *see Olden v. Kentucky*, 488 U.S. 227, 231 (1988), but argues that A.C.'s accusation against Aston, even if false, does not tend to establish bias against Mr. Cookson or motive to lie about him. Rather, the State argues, the prior accusation (if false) merely bears on A.C.'s credibility, and there is no constitutional right to impeach a witness' credibility through the introduction of specific prior acts. The State points to this Court's decision in *Hogan v. Hanks*, 97 F.3d 189 (7th Cir. 1996). In *Hogan*, a defendant accused of rape sought to cross-examine the alleged victim about two unprosecuted allegations of rape that she had made nine years earlier. The state trial court excluded mention of those allegations, and this court held on habeas review that the exclusion did not violate clearly established federal law. The State also relies upon cases in which other circuits have reached a similar conclusion.

The State goes on to distinguish this case from our decision in *Redmond* by pointing out that, in *Redmond,* the false prior accusation clearly demonstrated that the witness had a motive to lie. The fact that she had admitted to lying about a sexual assault in order to get her mother's attention "supplied a powerful reason for disbelieving her testimony eleven months later about having sex with another man, by showing that she had a motive for what would otherwise be an unusual fabrication." *Redmond*, 240 F.3d at 591-92. The State argues that no such connection is present here, where A.C.'s allegation "was not demonstrably false, let alone admittedly false," and A.C. did not admit to any motive for lying. Appellee's Br. 41-42. Here, the State argues, Mr. Cookson has nothing more than a "speculative notion" that A.C. lied in order to "punish or manipulate adults in her life." *Id.* at 42.

Finally, the State urges us to reject the First Circuit's holding in *White* that a motive can be inferred from past false allegations even if that motive cannot be identified. The State argues that *White's* holding is not supported by clearly established Supreme Court precedent. Even if *White* was correctly decided, however, the State contends that this case is distinguishable. It argues that, unlike in *White*, the prior allegation here does not "b[ear] a close resemblance" to the allegations against the defendant. A.C. accused Aston of penetrating her vagina with his finger, but accused Mr. Cookson of touching her anus with his penis. The State also contends that unlike in *White*, where the state court found that the prior allegations showed "a reasonable possibility of falsity," Mr. Cookson's claim of falsity here is based only on Aston's self-serving claim

of innocence and DCFS' decision not to act. Thus, the
State argues, not even *White* supports Mr. Cookson's
argument here.

Despite the obvious similarities between the situation
facing the First Circuit in *White* and the case before us
today, we do not believe that its rationale can control
here because we must conclude that the facts presented
by Mr. Cookson to the trial court did not establish that
A.C.'s allegation against Aston was false. To understand
why, it is necessary to understand the process that DCFS
follows when investigating an allegation of abuse:

> The [Abused and Neglected Child Reporting] Act
> provides that DCFS shall receive and investigate
> reports of child abuse or neglect made under the Act
> and maintain a State register of all such cases. After
> DCFS receives a report of suspected child abuse or
> neglect, DCFS forwards the report to the State regis-
> ter. Thereafter, DCFS investigates the report to deter-
> mine whether the report is "indicated" or "unfounded"
> within 60 days and reports the determination to the
> State register. If DCFS determines "that credible
> evidence of the alleged abuse or neglect exists," the
> report is deemed "indicated." If DCFS determines "that
> no credible evidence of abuse or neglect exists," the
> report is deemed "unfounded." If DCFS is unable to
> "initiate or complete an investigation on the basis of
> information provided to the Department," or is unable
> to do so within 60 days, the report is deemed "unde-
> termined." The Illinois Administrative Code (Code)
> provides that DCFS *must* make its determination
> within 60 days of the complaint.

*Cavarretta v. Dep't of Children & Family Servs.*, 660 N.E.2d
250, 251-52 (Ill. App. Ct. 1996) (citations omitted).

Thus, a conclusion by DCFS that an allegation is "un-
founded" does not establish that it is false; rather, it
simply indicates that the DCFS investigator did not
locate credible evidence establishing the allegation's
veracity prior to completion of the investigation, which
can last no longer than 60 days. Accordingly, the Illinois
Appellate Court has made it clear that an "unfounded"
determination "is not a final determination that the
accusations . . . were false," and, in itself, does not
establish a "reasonable probability of falsity." *People v.
Mason*, 578 N.E.2d 1351, 1356 (Ill. App. Ct. 1991). Indeed,
an "unfounded" determination does not preclude the
State from bringing criminal charges based on the allega-
tion. *See In re Marriage of Divelbiss*, 719 N.E.2d 375, 377 (Ill.
App. Ct. 1999) (describing a case in which a defendant
was tried for abuse of his daughter despite a DCFS deter-
mination that the allegation was unfounded). It seems
clear, then, that under Illinois law a DCFS finding that
an allegation was "unfounded" does not, by itself, estab-
lish that the allegation was false.[1]

This is not to say that DCFS' conclusions have no proba-
tive value in establishing the truth or falsity of an allega-
tion. In some cases, DCFS' conclusion that an allegation

---

[1] The probative value of DCFS' determination is even more
attenuated here than it would be in the usual case because
here the DCFS investigator actually concluded that A.C.'s
allegation was credible, only to be overruled by DCFS on appeal.

was unfounded, buttressed by other information available to the trial court, might be sufficient to establish that the allegation was false. Mr. Cookson submits that Aston's denial supports the DCFS' finding, but we cannot say that the state court acted unreasonably in concluding that a self-serving denial by the accused should be accorded little weight.

We also believe that it is very significant that the trial court had the opportunity to interview A.C. and to observe her demeanor. Based on this interaction and observation, the trial court concluded that A.C. was not clever enough to concoct false allegations of sexual abuse. On habeas review, we cannot disregard such a focused factual determination on a matter so quintessentially within the province of a trial judge who had the unique opportunity to observe the witness.

Accordingly, we conclude that the Supreme Court of Illinois did not act contrary to clearly established federal law when it affirmed the trial court's exclusion of questioning related to A.C.'s allegation against Aston.

## Conclusion

For the reasons set forth above, we affirm the judgment of the district court.

AFFIRMED